**Dan Allen WILKES, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55179.**

Court of Criminal Appeals of Texas, Panel No. 1.

Oct. 25, 1978.

Charles L. Caperton, Dallas, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for possession of more than four ounces of marihuana, wherein the jury assessed punishment at five (5) years in the Department of Corrections and a $5,000.00 fine.

In his sole ground of error, appellant contends that the evidence is insufficient to support the verdict.

The record reflects that at approximately 12:05 a. m. on April 29, 1976 Officer John Aycock of the Texas Department of Public Safety received a phone call from an agent in the department's Dallas office. After receiving this call, Aycock and several other agents set up surveillance for a Chevrolet pickup with a camper and a 1975 Blazer, allegedly traveling together. Aycock testified that he set up his surveillance on Interstate 35 close to Waco and directed the other two agents to set up between Waco and Temple.

At approximately 1:15 a. m., Aycock observed the vehicles traveling in a southerly direction on Interstate 35 in the direction of Temple. Aycock and the other officers followed the two vehicles to Temple, where they stopped for a short time at a restaurant and continued on to the Temple airport. When the vehicles reached the airport, Aycock withdrew his personal surveillance in favor of Department of Public Safety agents already set up to watch the airport. One of these officers, Agent Ronald Tucker, testified that he saw the vehicles enter the airport at approximately 1:35 a. m. Tucker stated that his surveillance took place from a nearby cemetery and was aided by the use of binoculars.

According to Tucker, the Blazer parked in front of the terminal to the airport while the pickup drove on to an area where air-

planes were tied down and backed up to the side of the twin engine craft. Due to weather conditions and the position of the pickup, Tucker was unable to see what took place next but stated that: "They appeared to be moving something is all I could tell, back and forth from the pickup to the plane." Shortly after this, the pickup pulled away from the plane and drove to the terminal at which the Blazer was parked. A few moments later, both vehicles drove through the main gates of the airport, where they were stopped by Aycock and the other two officers who had been waiting there.

The record reflects that both vehicles were searched. Thirty-one "compacted packages" containing 572 pounds of marihuana were found in the pickup camper and its driver, Michael Gafney, was arrested. A ground to air radio was also found in the pickup. Several maps of "Mexico and South American type terrain," a transmitter and a following device detector were found in the Blazer, which was driven by the appellant. Also found in the Blazer were rental receipts for airplane seats from the twin engine airplane observed by Agent Tucker and an electronic transmitter-detector. In addition to these items, the officers found the key to the same airplane in the possession of Tom Walden, a passenger in the Blazer at the time of the stop. Upon searching the airplane, the officers found what were described as marihuana "sweepings and seeds and so forth." No marihuana was found in the Blazer or on the person of the appellant.

An accused may with another or others jointly possess dangerous drugs or narcotics. Thus, possession of such items need not be exclusive and evidence that the accused jointly possessed narcotics with others is sufficient to sustain a conviction. *Martinez v. State,* 539 S.W.2d 885 (Tex.Cr. App.1976); *Woods v. State,* 533 S.W.2d 16 (Tex.Cr.App.1976); *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr.App.1975), and cases cited therein. It must be remembered, however, that mere presence alone at a place where narcotics or dangerous drugs are be-

ing used or possessed by others does not justify a finding of joint possession. *Ayers v. State,* 570 S.W.2d 926 ( # 55,365, delivered 9/5/78); *Brooks v. State,* 529 S.W.2d 535 (Tex.Cr.App.1975); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App.1977). It has been consistently held in this state that possession means more than just being where the action is; the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Harrison v. State,* supra; *Curtis v. State,* supra; *Payne v. State,* 480 S.W.2d 732 (Tex. Cr.App.1972). Therefore, there must be additional independent facts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it. *Ayers v. State,* supra, and cases cited therein. In the case at bar, the State contends that the discovery of appellant in one of the vehicles which had been under surveillance from Waco to the Temple airport was sufficient to affirmatively link him to the contraband found in the other vehicle. Based upon the record which has been presented for our review in this cause, we cannot agree with this contention.

The record reflects that the appellant was seen driving the 1975 Blazer to the Temple airport. Agent Tucker testified that the Blazer parked in front of the terminal of the airport and did not proceed with the pickup camper to where the airplanes were parked. Nowhere does the record indicate that the appellant came into contact with the airplane in question or that he was present when the pickup truck parked next to the airplane. In fact, the record reflects that he was inside the Blazer, which was parked some distance away. Although he was seen driving the Blazer, the record shows that the owner of the Blazer was Walden. Moreover, no contraband was shown to have been found on appellant's person or in the Blazer. There was no showing that airplane seats were placed in the Blazer on the night in question, no evidence of furtive gestures toward

the contraband, no attempt to escape, no evidence of marihuana smoke, no evidence of the appellant being under the influence of marihuana or other drugs, and no incriminating statements at the time of the arrest. While not above suspicion when viewed in the light most favorable to the jury's verdict, we cannot conclude the evidence is sufficient to affirmatively link the appellant to the contraband seized in the other vehicle.

In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, the United States Supreme Court by opinion on June 14, 1978, held that the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient . . . ." In *Green v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15, handed down the same day as the *Burks* decision, the Supreme Court held, "Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton v. Maryland* [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)], we are bound to apply the standard announced in *Burks* to the case now under review."

Having found that reversal must result in the instant case since we concluded that the evidence is insufficient to support the conviction, the Supreme Court's decisions in *Burks v. United States,* supra, and *Greene v. Massey,* supra, dictate that no further prosecution be had in this cause.

The judgment of conviction is set aside and is reformed to show an acquittal.

For the reasons stated, the judgment is reversed.