**Freeman OAKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00078–CR.**

Court of Appeals of Texas, Dallas.

March 3, 1982.

J. Stephen Cooper, Dallas, for appellant.

R. Kris Weaver, Maridell Templeton, Asst. Dist. Attys., Dallas, for appellee.

ON MOTION FOR REHEARING

ROBERTSON, Justice.

This is an appeal from a conviction for possession of heroin for which the court set a punishment of confinement for three years. Appellant contends the evidence is insufficient to support the verdict. We do not agree and, therefore, we affirm the judgment of the trial court.

The evidence, viewed in the light most favorable to the State, shows that on December 4, 1978, Officer Jerry W. Foster of the Drug Abuse Section of the Vice Control

Division of the Dallas Police Department was surveilling a residence in Dallas County. During the morning he saw ten known heroin addicts go to the door of the residence. In each case, appellant came to the front door and talked for a few moments. Each addict gave appellant money in exchange for an unidentified item. Officer Foster could not tell what the item was. In the afternoon, four such exchanges were made.

That afternoon, Officer Foster and another Dallas Police Officer, Officer Burkett, executed a warrant at the residence. There were fifteen people at the residence. Officer Burkett discovered thirteen red capsules in a wastepaper basket approximately six to eight inches from where appellant was standing. Appellant was the only person near the basket. The capsules contained heroin and had a street value of $12.00 each. Officer Burkett testified that he could see the capsules when he was standing over the basket. Appellant had an unspecified amount of money on his person.

■ In order to establish the unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Dubry v. State*, 582 S.W.2d 841 (Tex.Cr.App.1979). It is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Damron v. State*, 570 S.W.2d 933 (Tex.Cr.App.1978). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Wiersing v. State*, 571 S.W.2d 188 (Tex.Cr.App.1978).

The affirmative link can be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App. 1979). Among such additional facts which can establish the affirmative link are: the contraband was in open or plain view, *Hernandez v. State*, 538 S.W.2d 127 (Tex.Cr. App.1976); the place where the contraband was found was enclosed, *Mendoza v. State*, 583 S.W.2d 396 (Tex.Cr.App.1979); when the contraband was found, there was sufficient light for a person to see that contraband, *Hernandez v. State, supra*; the amount of contraband found, *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr.App.1975); the narcotic was conveniently accessible to the accused, *Hahn v. State*, 502 S.W.2d 724 (Tex.Cr.App.1973); and the accused's action toward the contraband may show his intent to violate the statute, *Alaniz v. State*, 458 S.W.2d 813 (Tex.Cr.App.1970).

■ An examination of the record in the present case shows that there is sufficient evidence to affirmatively link appellant to the contraband. Appellant was within six inches of the contraband at the time the officers executed the warrant. The contraband was in plain view from appellant's location and no other person was close to the contraband. Appellant had an unspecified amount of money on his person and had been observed selling something to *fourteen* known heroin addicts earlier that day.

Our prior opinion is withdrawn. The State's motion for rehearing is granted and the judgment of the trial court is affirmed.

Affirmed.

GUITTARD, C. J., and CARVER, SPARLING, VANCE, ALLEN and GUILLOT, JJ., concur.

AKIN, STOREY, STEPHENS and WHITHAM, JJ., join in this opinion.

WHITHAM, Justice, dissenting.

I respectfully dissent. In my opinion the evidence is insufficient. I would reverse and direct a verdict of acquittal.

A more detailed statement of the State's evidence than as contained in the majority opinion is thought necessary.

Officer Foster testified that on December 4, 1978, he, along with Officer Burkett,

executed a search warrant at an apartment. It was not established for what the warrant authorized the police to search. The apartment was described by Foster as a "gambling house." Upon approaching the closed apartment door, the police opened the door and observed approximately fifteen people in one large room described as a combination living room and kitchen area. Officer Foster testified that the front bedroom had a bed in it and that the other bedroom had a dice table; a card table set up. Appellant was at the kitchen stove when the police entered. Seated at the nearby kitchen table were four or five people playing dominoes.

Officer Foster testified that a wastepaper basket was positioned about two feet from the appellant. Officer Burkett testified that appellant was at a maximum of six to eight inches from the wastepaper basket. Those persons at the kitchen table were about six feet from the basket. Burkett testified he looked into the trash basket and that, although "there was a lot of trash in there," he observed "a plastic baggie, clear baggie, sandwich type bag that contained thirteen (13) red capsules that appeared to be Heroin." When asked to be more specific as to the location of the contraband, Burkett said only that "they were lodged between the side of the trash can and top of the trash."

The testimony of the police officers further established that appellant did not rent the premises; that no contraband was found on his person; that he was not under the influence of heroin; that he had no needle marks; that he made no furtive movements of any kind; that no fingerprints were taken from the plastic baggie; and that additional undescribed drugs were found in another room of the apartment. Officer Foster testified that a man named Lowry was the lessee of the premises. Officer Foster further testified that he had previously described the apartment as "It's a gambling house. Nobody is actually in charge, as far as I can find out."

The testimony of the police officers also established that when they entered the apartment no one ran from the location where the wastepaper basket was placed; that appellant was not seen to bring his hand up from the wastepaper basket; that a search of the persons on the premises did not produce any drugs or weapons on any of those persons. Officer Foster, who searched appellant, could not recall how much money appellant had; it was just "some" money. Officer Foster also testified that some of the persons in the apartment were shooting dice and there was a lot of money around.

Foster also testified that prior to the execution of the warrant he had, on that same day, conducted a surveillance of the apartment. During that morning he saw some eight to ten persons he described as known heroin addicts knock on the door, following which appellant would come outside and talk for a few minutes. Foster testified he observed each person give appellant money and appellant would then give the person "something." Foster could not see or describe this "something." In the afternoon, and still prior to the execution of the warrant, three or four such exchanges were made; however, Officer Foster did not describe those three or four persons as "known heroin addicts." Officer Foster did not testify as to how he could identify any person who came to the door as a "known heroin addict."

The majority recites certain affirmative links it relies on as showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. Those links must be considered within the context of the facts of this case. The links recited are:

(a) the contraband was in open or plain view,

(b) the place where the contraband was found was enclosed,

(c) when found, there was sufficient light for a person to see the contraband,

(d) the contraband was conveniently accessible to the accused, and,

(e) the accused's actions toward the contraband may show his intent to violate the statute.

I am at a loss to understand how the majority finds this last "link" to be applicable to appellant. The State's evidence shows appellant standing at a kitchen stove either six to eight inches or two feet from a wastepaper basket in which the contraband was found. Appellant made no furtive movements, he was not seen to bring his hand up from the wastepaper basket and he did not run when the officers opened the door. There is no proof whatever of appellant's action toward the contraband. In this instance, the majority creates a "link" out of thin air.

With respect to the open and plain view link, I do not agree that the heroin in the present case was in open and plain view. The capsules were in a trash receptacle, not lying on the kitchen table. The fact that the officer, in executing the warrant, could peer into the trash container and identify disposed of substances lodged between the side of the trash can and top of the trash does not establish open and plain view.

The links relied on by the majority cannot be considered in a vacuum. They have to be considered in light of the State's case. It was not shown for what the warrant authorized a search. The premises in question were not the "residence" of the appellant as the majority would have us believe, rather, the premises were a public place. In Officer Foster's words it was a gambling house with no one in charge. It was not difficult for persons to gain entrance to the premises. The officers executing the warrant simply opened the door. In this gambling house were fifteen persons. The appellant did not own or rent the premises. Appellant did not have dominion and control of the premises. Someone named Lowry was the lessee. Appellant was not shown to have his residence on the premises. Appellant made no furtive gestures, no statements or spontaneous utterances, no attempt to escape. The appellant did not bring his hand up from the wastebasket when the officers entered. Appellant had no needle marks and was not under the influence of drugs. Appellant was not in actual physical possession of drugs. No fingerprints were taken. The amount of money in appellant's possession was not shown; it was just "some money."

That appellant had some money on him in a gambling house is understandable. I do not consider the fact that appellant appeared at the door numerous times during the day to be evidence that appellant was in control of the premises; especially in light of Officer Foster's testimony that it was a gambling house with nobody actually in charge. Such testimony would refute any consideration that appellant was in control of the premises.

As succinctly put by the Court of Criminal Appeals, possession means more than being where the action is. *See Hausman v. State*, 480 S.W.2d 721 (Tex.Cr.App.1972). There the accused was one of a number of persons around a campfire. The officers found the accused on a sleeping bag. The accused appeared to be asleep to one officer. To another officer the accused appeared to be in a tranquil state. One foot from the accused's head, the officers found a brown paper bag with the top rolled up containing marihuana. Seven people, including the accused, were positioned around the campfire. Of these, some were within six feet of the bag of marihuana. Immediately prior to the accused's arrest officers had conducted a surveillance of the campfire from about 10:30 p.m. to about 12:05 a.m. An officer testified that during the surveillance he observed through binoculars persons around the campfire passing a cigarette around and cupping their hands, and that while he could not identify what they were smoking as marihuana, the manner in which they were smoking the cigarette led him to believe it was marihuana. The officer was unable to identify the accused as having been present during this observation. In *Hausman* the court held that the close proximity of the accused to the bag of marihuana did not justify an inference that he possessed the drug under the circumstances of the case. In the present case, as was the accused in *Hausman*, the appellant has been convicted of being where the action is.

It is difficult to understand how the majority can hold the evidence to be sufficient in the present case given the decision of the Court of Criminal Appeals in *Hausman*. In *Hausman* the accused was one foot from the marihuana. In the present case the appellant was six to eight inches under the State's closest distance. In *Hausman* other persons around the campfire were within six feet of the marihuana. In the present case the four or five domino players at the kitchen table were six feet from the heroin. In *Hausman* there was the accused's tranquil state to suggest drugs. In the present case there were appellant's exchanges at the front door to suggest drugs. Surely if in *Hausman* the evidence was insufficient, it should be insufficient in the present case.

Under the majority opinion, otherwise innocent persons in public places such as restaurants, bars, pool halls, clubs and waiting rooms are subject to arrest and conviction for possession if:

    (a) what turns out to be illegal drugs were in open or plain view,

    (b) the public place was enclosed,

    (c) there was sufficient light for the patron to see the substance, and,

    (d) the substance was conveniently accessible to the patron.

Such an illogical result follows from the majority's mechanical "adding up" of "links" found in other cases without regard to the State's evidence in the instant case. Such an illogical result also follows when the majority seeks to place the scene of the crime in the "residence" of the accused rather than its actual locale: a public gambling house.

An accused may with another or others jointly possess illegal drugs. Thus possession of such items need not be exclusive and evidence that the accused jointly possessed illegal drugs with others is sufficient to sustain a conviction, but mere presence alone at a place where illegal drugs are being used or possessed by others does not justify a finding of joint possession. *Underwood v. State*, 571 S.W.2d 7 (Tex.Cr. App.1978).

I have my suspicions as to what appellant was doing in the exchanges at the door observed by Officer Foster; however, there was no evidence as to what the "something" was that was being exchanged by appellant for money at the door. It is not proper to fill that void in the evidence by speculation that it was heroin because heroin was later found on the premises. It should be remembered that the officers testified that other drugs besides heroin were found on the premises. For all anyone knows it was those drugs, perhaps, that were involved in the exchanges at the door. But it is for the possession of heroin that appellant stands convicted and there is no evidence that appellant had heroin in his hands at the door. I am not willing to affirm a conviction on suspicion or mere probability that appellant was a drug dealer.

In the present case, as was the holding in *Hausman*, close proximity is not a link. Given the State's evidence in the present case, the majority has held that presence alone is sufficient. I cannot subscribe to a holding that mere presence is sufficient to affirmatively link the accused to the contraband. The State had the burden to prove appellant's guilt beyond a reasonable doubt. A conviction based on circumstantial evidence cannot be sustained unless the circumstances exclude every other reasonable hypothesis except that the accused is guilty. Proof which amounts only to a strong suspicion or mere probability is insufficient. *Higgins v. State*, 515 S.W.2d 268 (Tex.Cr. App.1974). Because the circumstantial proof in the present case amounts only to a suspicion that appellant had knowledge and control of the heroin the judgment should be reversed and the appellant acquitted.

AKIN, STOREY, STEPHENS and FISH, JJ., concur in this opinion.

GUITTARD and ROBERTSON, CARVER, SPARLING, VANCE, GUILLOT, and ALLEN, JJ., dissent.

AKIN, STOREY, STEPHENS, FISH and WHITHAM, JJ., dissent.

FISH, Justice, dissenting.

Appellant's conviction was reversed on original submission by a panel of this court. On the State's Motion for Rehearing, the panel decided, with Justice Whitham dissenting, to withdraw its previous opinion and affirm. A majority of the court sitting *en banc* then voted to approve the opinion Judge Robertson had written on rehearing for the panel majority. I respectfully disagree with that decision. Although I concur with Justice Whitham's opinion, I believe there are additional reasons why the evidence in this case is insufficient to support the conviction.

The Court of Criminal Appeals recently reversed a conviction for possession of heroin on facts quite similar to this case. In *Rhyne v. State*, 620 S.W.2d 599 (Tex.Cr. App.1981), the police arrested appellant after they discovered heroin during a legally authorized search of private residence where he lived with two other people, Hodge and Wesson. Appellant was the lessee of the residence and the utilities were in his name. When the officers arrived, they observed Wesson running into a bedroom, where he was found to have a pistol. Appellant, meanwhile, was seated in the living room. He was not named in the search warrant and no drugs were found on or about his person. Six packages of heroin were, however, discovered behind a shingle on the exterior of the house. R. J. Mack, one of the officers who executed the search warrant, testified that he had purchased drugs at the house on twelve different occasions while working in an undercover capacity. On two or three of those occasions, appellant was present at the house when Mack announced he was there to "score," but Mack testified appellant had nothing to do with the sale or delivery of narcotics on those occasions.

After discussing the law of "affirmative links" and circumstantial evidence, the Court analyzed the evidence to determine whether the evidence was sufficient to exclude every reasonable hypothesis except appellant's guilt:

In the instant case, there was no showing that appellant encouraged Wesson to sell narcotics. Appellant was not shown to have exercised any control over the heroin which was recovered outside the house. There were no furtive gestures by appellant and he was not shown to have been under the influence of narcotics. Appellant did not attempt to escape at the time the warrant was executed. Finally, the heroin was not in plain view, but rather hidden under a shingle on the exterior of the home.

While there is a suspicion or probability of appellant's guilt, we conclude that the circumstances proven do not exclude *the reasonable hypothesis that appellant was merely present where the action was taking place*. We find the evidence insufficient to support appellant's conviction [Emphasis added].

620 S.W.2d at 601.

In the instant case, the evidence of appellant's control over the premises was even weaker than in *Rhyne*. There, appellant rented the residence and had the utilities in his name; here, appellant was merely an occupant of the premises, which the State's evidence showed was a public gambling house, with no one in charge. In *Rhyne*, a police officer testified that he had purchased narcotics on the premises twelve different times, although not from appellant; here, all we know is that appellant had monetary transactions with several known heroin addicts. As in *Rhyne*, appellant in this case made no furtive gestures, was not under the influence of drugs, had no needle marks on his arms, and had no drugs on his person.

The majority opinion in the present case essentially finds that appellant's proximity to the contraband was sufficient to exclude every reasonable hypothesis other than guilt. It states:

An examination of the record in the present case shows that there is sufficient evidence to affirmatively link appellant to the contraband. Appellant was within six inches of the contraband at the time the officers executed the warrant. The contraband was in plain view from

appellant's location and no other person was close to the contraband. Appellant had an unspecified amount of money on his person and had been observed selling something to *fourteen* known heroin addicts earlier that day [Emphasis in majority opinion].

Taking these "links" in reverse order, it was undisputed that appellant had money, but not drugs, on his person, just as did every one of the fourteen other people who occupied this gambling house at the time of the search. There is *no* evidence that the contraband was in plain view "from appellant's location," as asserted by the majority. Officer Foster testified that appellant was about two feet from the wastepaper basket containing the contraband. Officer Burkett testified that the trash container was about "six to eight inches maximum" from appellant's right leg. Neither of these officers testified what could be seen from "appellant's location," whether that was six inches or two feet away. Rather, officer Burkett testified what he observed standing *directly over* the trash container:

Q: Did you have occasion to look inside the basket and see what was in there?

A: Yes, sir, I did.

Q: If you were just looking *straight down* into that basket, who [sic] could you see?

A: There was a lot of trash in there. There was also a plastic baggie, clear baggie, sandwich type bag that contained thirteen (13) red capsules that appeared to be Heroin.

Q: As you looked down, could you see those? Were the capsules sitting on top of the trash or were they buried underneath?

A: They were lodged between the side of the trash can and top of the trash.

Q: But you could see them *where you were standing over the basket*; is that correct?

A: Yes, sir.

Q: Could you see that there were capsules inside the bag?

A: Yes, sir.

Q: They were visible to your eyes; is that right?

A: Yes, sir.

[Emphasis added]. That is the only evidence of "plain view."

Furthermore, there is no evidence that even if the pink capsules were visible to appellant at his location, he knew them to be heroin. Officer Foster described the condition of the contraband when discovered as follows:

Q: Was the Heroin contained in a plastic container?

A: If I'm not mistaken, Officer Burkett was the one that found it. If I'm not mistaken, it was in a plastic bag, possibly a cigarette pack, cellophane portion.

Q: Was it in capsules?

A: Right, pink capsules.

Q: So it was a powdery substance inside pink capsules inside a cellophane sack?

A: That's correct.

It was later stipulated that the powdery substance inside the pink capsules was heroin.

In a related context, the Court of Criminal Appeals has held that an officer's warrantless seizure of a balloon containing heroin could not be sustained under the "plain view" doctrine where the officer failed to testify that he was cognizant of the "well known" fact that heroin is kept in balloons. *Brown v. State*, 617 S.W.2d 196, 200 (Tex. Cr.App.1981). *See also Boyd v. State*, 621 S.W.2d 616, 617 (Tex.Cr.App.1981). To reconcile the *Brown* decision with the majority holding here that the heroin was in "plain view," we must impute to the Court of Criminal Appeals a distinction between the meaning of "plain view" in warrantless search and seizure cases and "plain view" in possession of contraband cases. Nothing in the cases suggests to me that the Court of Criminal Appeals intends such a distinction. On the contrary, the Court's opinion in *Sullivan v. State*, 626 S.W.2d 58 (Tex.Cr.App. 1981), indicates that the State's attempt to

justify a warrantless seizure of methamphetamine under the "plain view" doctrine is measured by the same evidentiary tests applied in possession of contraband cases: whether the accused attempted to escape, made furtive gestures, or was apparently under the influence of an intoxicating substance. I believe that heroin in the pink capsules here was no more in "plain view" than the heroin in opaque party balloons was in *Brown.*

The only real link found by the majority is the accused's proximity to the contraband: i.e., that he was within six inches of it and "no other person was close" to it. While "close" is a matter of degree, and appellant was admittedly closer than anyone else, Officer Foster testified without contradiction that 4 or 5 people were within six to eight feet of the trash receptacle.

I do not believe appellant's proximity to the contraband, under these circumstances, excludes every reasonable hypothesis except his guilt. I would, therefore, reverse the conviction and direct an acquittal.