**Freeman OAKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 307–82.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 1, 1982.

---

J. Stephen Cooper, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Maridell Templeton, and Greg Davis, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of possession of heroin in a bench trial and his punishment was assessed at three (3) years' imprisonment.

The appellant contends in his sole ground of error the evidence is insufficient to sustain the judgment of conviction. Originally a panel of the Dallas Court of Appeals agreed with one judge dissenting. On rehearing before the Dallas Court of Appeals, en banc, the judgment of reversal was set aside and the conviction was affirmed in a 7–5 decision with dissenting opinions by Justice Whitham and Justice Fish. *Oaks v. State,* 629 S.W.2d 272 (Tex. App.—Dallas 1982). Appellant now seeks review of such decision by virtue of his petition for discretionary review.

The issue presented is a close question as indicated by the opinions of the Court of Appeals. The only witnesses were State's witnesses, Officers Foster and Burkett. Needless to say, the evidence was not developed as well as it might have been.

On December 4, 1978, Officer Jerry W. Foster of the Dallas Police Department, Drug Abuse Section, Vice Control Division, and other officers had an apartment at 1611 Peabody in Dallas under surveillance. Foster observed eight to 10 individuals come to the house in the morning, and three or four individuals appeared in the afternoon. Foster stated these individuals were known to "us" as heroin addicts. He stated these individuals exchanged money with the appellant at the door of the house or outside for "something" which Foster could not identify. Foster obtained a search warrant

sometime that day,[1] and in the afternoon he and other officers executed the search warrant at apartment # 209 at said address. The officers opened the door and entered. There were 15 people in the apartment playing cards, dominoes and shooting dice and there was "a lot of money around." There was a combination living room and kitchen. Appellant was seen standing in the kitchen. He was about two feet from a trash can. Four, five or six persons were playing dominoes at a table about six or eight feet from the trash can. Foster did not see the appellant make any furtive gestures. He did not attempt to escape or flee. Foster searched appellant and found no drugs, etc., but found "some money," but could not recall how much. He related there were no needle marks on appellant's person, and that the appellant was not under the influence of heroin. Foster stated he moved the appellant to another location in the house. In searching the bedrooms Foster revealed he found "drugs in some of the other rooms," but he did not articulate what drugs he found. He testified he did not, but that Officer Burkett found the heroin in the trash can in the kitchen, that the powdery substance was in 13 pink capsules in a plastic bag, "possibly a cigarette pack, cellophane portion."

In describing the premises, Foster stated that he had said "It's a gambling house. Nobody is actually in charge, as far as I can find out." He related he had later determined the leasee of the premises was a man named Lowry, who was not the appellant.

Dallas Police Officer David Burkett testified he was with Foster when the search warrant was executed on the date and at the place in question. Upon entering the apartment, he observed the appellant standing in the kitchen some six or eight inches from a wastepaper basket, and appellant was the person he saw closest to the basket. Standing over and looking straight down in the basket, Burkett saw "a lot of trash in there" and lodged between the side of the basket or trash can and the top of the trash was a plastic baggie, a "sandwich type bag that contained thirteen (13) red capsules that appeared to be heroin." Burkett related he did not retrieve the capsules but contacted Foster, showed them to him, and Foster picked them up. Burkett stated upon entry he did not observe any movement on appellant's part and did not search the appellant. There was no testimony as to appellant's location at the time of the discovery of the capsules.

There was a stipulation that capsules found in the wastepaper basket contained heroin.

█ In order to establish the unlawful possession of a controlled substance such as heroin, the State must prove two elements: (1) that the accused exercised care, control and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Rhyne v. State,* 620 S.W.2d 599 (Tex.Cr.App.1981); *Dubry v. State,* 582 S.W.2d 841 (Tex.Cr.App.1979); *Wilkes v. State,* 572 S.W.2d 538 (Tex.Cr. App.1978); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App.1977); *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977); *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976).

█ Possession of the controlled substance need not be exclusive and evidence which shows the accused jointly possessed the controlled substance with another is sufficient. *Dubry v. State,* supra; *Waldon v. State,* 579 S.W.2d 499 (Tex.Cr.App.1979); *Sewell v. State,* 578 S.W.2d 131 (Tex.Cr. App.1979); *Wilkes v. State,* supra. *Harrison v. State,* supra; *Abercrombie v. State,* 528 S.W.2d 578, 586 (Tex.Cr.App.1974) (Opinion on State's Motion for Rehearing); *Collini v. State,* 487 S.W.2d 132, 135–136 (Tex.Cr.App.1972). See also *Damron v. State,* 570 S.W.2d 933 (Tex.Cr.App.1978).

█ Various facts and circumstances may be shown to prove that the accused and another person or persons acted together in jointly possessing a controlled substance. *Abercrombie v. State,* supra; *Harvey v. State,* 487 S.W.2d 75 (Tex.Cr.App. 1972); *Collini v. State,* supra; *Ochoa v. State,* 444 S.W.2d 763 (Tex.Cr.App.1969).

---

1. The basis for the search warrant is not reflected by this record.

The mere presence of a defendant at the scene of an offense or even knowledge of an offense does not make one a party to joint possession. *Rhyne v. State,* supra; *Dubry v. State,* supra; *Waldon v. State,* 579 S.W.2d 499 (Tex.Cr.App.1979); *Wilkes v. State,* supra. It has been said that possession means more than being where the action is, it involves the exercise of dominion and control over the thing allegedly possessed. *Brown v. State,* 481 P.2d 475, 477 (Okl.Cr.App.1971); *Shortnacy v. State,* 474 S.W.2d 713, 716 (Tex.Cr.App. 1972); *Adair v. State,* 482 S.W.2d 247 (Tex. Cr.App.1972); *Payne v. State,* 480 S.W.2d 732 (Tex.Cr.App.1972); *Hausman v. State,* 480 S.W.2d 721 (Tex.Cr.App.1972).

In *Dubry v. State,* supra, at p. 843, this court wrote:

"Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Waldon v. State,* supra; *Wilkes v. State,* supra; *Harrison v. State,* supra. This affirmative link is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Waldon v. State,* supra; *Harrison v. State,* supra; *Long v. State,* 532 S.W.2d 591 (Tex.Cr.App.1976)."

The majority opinion of the Court of Appeals set forth certain facts which can establish the affirmative fact citing cases such as "the contraband was in open or plain view," *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976); and "the narcotic was conveniently accessible to the accused," *Hahn v. State,* 502 S.W.2d 724 (Tex.Cr.App. 1973); and "the accused's action toward the contraband may show his intent to violate the statute," *Alaniz v. State,* 458 S.W.2d 813 (Tex.Cr.App.1970).

The opinion then stated:

"An examination of the record in the present case shows that there is sufficient evidence to affirmatively link appellant to the contraband. Appellant was within six inches of the contraband at the time the officers executed the warrant. The contraband was in plain view from appellant's location and no other person was close to the contraband. Appellant had an unspecified amount of money on his person and had been observed selling something to fourteen known heroin addicts earlier that day."

On this basis the trial court's judgment was affirmed.

The apartment where the heroin was found was described by Officer Foster as a gambling house with no one in charge as far as he could determine. He later learned it was leased to one Lowry. There is no showing that appellant was a resident or renter, etc., of the apartment. The apartment door was unlocked when the officers entered, and there were some 15 people present, some of whom were engaged in playing dominoes, cards and dice. The appellant was standing either six to eight inches or two feet from the trash can where the heroin was found. A search revealed no contraband on his person. There were no needle marks on his arms and he did not appear to be under the influence of any drugs. The majority of the Court of Appeals concluded the heroin was in plain view from appellant's location. This is not supported by the evidence. No one placed himself in appellant's position and stated that he could see the heroin in the trash can from that location. Officer Foster stated he saw appellant when he (Foster) entered the apartment. He searched the appellant and moved him to another location. He did not see the heroin. The heroin was found by Officer Burkett during a search. The trash can was full of trash and by standing directly over and looking straight down he saw the red capsules in a plastic bag lodged between the side of the can and the top of the trash. It was not shown which side of the can heroin was on or whether that side was nearest to the appellant's location at the time of the officers' entry, nor the position of the trash at the top of the can. Foster's attention was called to the heroin

by Burkett before he even observed the same.[2] Thus, there is no support for the statement by the Court of Appeals' majority that the heroin was in plain view. Further, there is no showing that even if the capsules were visible from appellant's location that he would have known them to be heroin capsules.

The appellant was apparently closer to the trash can at the time the officers entered the apartment than other persons, whether it be six to eight inches or two feet from the can, but four to six other people were within six to eight feet from the can at the time. Appellant was not seen to make any movement towards the can nor any furtive gestures at all. After the search of appellant's person, he was moved by Officer Foster from the location he occupied when the officers entered. The space of time between such moving and the time of the discovery of the heroin by Officer Burkett is not reflected, nor was it shown the kitchen area was under the observing eye of the officers at all times prior to the discovery of the heroin. No fingerprint evidence was offered and one officer testified he did not know whether fingerprints had been lifted from the plastic bag in which the capsules were found. "Close" is a matter of degree and close proximity alone would, under the circumstances, hardly be an affirmative link to the heroin but only a factor to be considered in the totality of the circumstances.

Officer Foster discovered "some" money on appellant's person, but could not recall the amount. Whether the appellant had a dollar and some change or a large amount of money is not shown by the record. If the amount of money was more than would normally be carried by an individual, it might be indicative of gambling or dealing in narcotics, but the record does not aid us in this regard. The place was a "gambling house" and the officers observed "a lot of money" in the apartment. The fact of "some" money on appellant is hardly a link

to the possession of the heroin found, the amount not being specified. The fact that appellant had some money on his person while in a gambling house is understandable.

The most damaging evidence was Foster's testimony that through binoculars he saw appellant at the premises during the day exchange "something" for money with 13 or 14 individuals who were "known heroin addicts." Foster could not identify the "something" and did not explain how he or the other officers knew the individuals were heroin addicts.

In *Hausman v. State*, 480 S.W.2d 721 (Tex.Cr.App.1972), the officer observed through binoculars persons around a campfire passing a cigarette around and cupping their hands. The manner led him to believe the group was smoking marihuana, but he could not identify it as such. The officer could not identify appellant as being present at the time of observation. Later, while executing a search warrant, they found appellant in a sleeping bag around the campfire. A foot from appellant's head was found a brown paper bag containing marihuana. Six other people were positioned around the campfire. No one was able to testify if Hausman had been there all evening or when he arrived. When he was arrested, Hausman was not under the influence of drugs, no marihuana was found on his person, and no marihuana odor was detected.

In *Hausman* the court concluded the close proximity of the accused to the bag of marihuana did not justify an inference that he possessed the drug under the circumstances of the case.

In *Rhyne v. State*, 620 S.W.2d 599 (Tex. Cr.App.1981), the conviction for possession of heroin was reversed. Rhyne was arrested after heroin was discovered under a shingle on the house's exterior during the execution of a search warrant. Rhyne lived there with two other men, Hodge and Wesson. Rhyne had rented the house and the

---

**2.** Foster described the capsules as pink rather than red and recalled the container as a cigarette pack, cellophane portion, while Burkett

related the 13 capsules were pink and in a sandwich-type baggie.

utilities were billed to him. When the officers arrived, Wesson ran to a bedroom, was pursued and found to have a pistol. Rhyne was seated in the living room at the time. No drugs were found on or about his person. The undercover officer testified he had made 12 purchases of drugs at the house, and that Rhyne was present on two or three of the occasions but had nothing to do with the sales.

There this court wrote:

"In the instant case, there was no showing that appellant encouraged Wesson to sell narcotics. Appellant was not shown to have exercised any control over the heroin which was recovered outside the house. There were no furtive gestures by appellant and he was not shown to have been under the influence of narcotics. Appellant did not attempt to escape at the time the warrant was executed. Finally, the heroin was not in plain view, but rather hidden under a shingle on the exterior of the home.

"While there is a suspicion or probability of appellant's guilt, we conclude that the circumstances proven do not exclude the reasonable hypothesis that appellant was merely present where the action was taking place. We find the evidence insufficient to support the appellant's conviction."

■ Where there is an absence of direct evidence that an accused was in exclusive possession of a narcotic, then possession, if any, must be proven by circumstantial evidence. *Abercrombie v. State,* supra; *Collini v. State,* supra.

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Rhyne v. State,* supra; *Bryant v. State,* 574 S.W.2d 109 (Tex.Cr. App.1978). Proof which amounts only to a strong suspicion or mere probability is insufficient. *Ford v. State,* 571 S.W.2d 924 (Tex.Cr.App.1978); *Rhyne v. State,* supra; *Higgins v. State,* 515 S.W.2d 268, 271 (Tex. Cr.App.1974); *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App.1969).

■ From the facts only a strong suspicion is created that appellant was guilty of the offense charged. This is insufficient to sustain the conviction. See *Dubry v. State,* supra, and cases there cited; *Hausman v. State,* supra; *Rhyne v. State,* supra.

The judgments of the Court of Appeals and the trial court are reversed, and the appellant is ordered acquitted. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).