STATE'S EXHIBIT NO. 7

Michael G. McCREIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–85–00404–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 24, 1986.

Rehearing Denied Oct. 28, 1986.

Jimmy Parks, San Antonio, for appellant.

Sam Millsap, Jr., Elizabeth Taylor, Daniel Thornberry, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

Appeal is taken from conviction for possession of methamphetamine, TEX.REV. CIV.STAT.ANN. art. 4476–15 § 4.02 (Vernon 1976 and Supp.1986). After a jury found appellant guilty of the offense, it assessed punishment at seven years imprisonment and $5,000.00 fine.

Appellant raises six grounds of error. We address only two in our disposition of the case. These are that the evidence was insufficient to sustain appellant's conviction for possession of methamphetamine and that it was error for the court not to exclude certain statements made by appellant.

We agree that the evidence is insufficient to prove possession in this case. The evidence shows that on January 14, 1986 two San Antonio Police Department detectives, armed with a search warrant, had under surveillance a night club which featured nude dancing. They waited until appellant arrived at 2:00 P.M. and served the warrant. The place to be searched for methamphetamine was "Dirty Sally's," which opened for business (nude dancing but no liquor sold) from 8:00 P.M. until 4:00 A.M. The search was based on a tip from an unnamed informant, the allegation in the affidavit being that the informant had seen methamphetamine possessed by the appellant the day before "at the above described premises."

The premises consisted of a one-story building to which had been added a loft-type upstairs. Appellant was the owner of the night club as well as the owner of Quik-Tow, a business which faced on the Austin Highway. There was some testimony that he had other business interests and

had his office for all these in his apartment, located in an apartment complex away from these premises.

The stairs led only to the office of "Dirty Sally's." The bartender testified the office was used by the manager and himself to "count the money" after 4:00 A.M. each morning. He said the manager, who had the combination to the safe located there, put receipts in the safe. He said the manager, the custodian, and appellant all had keys to the office. He stated that appellant often was not at the club. He also testified that the club hired many transient dancers who would work only a day or two and then "move on." In describing the upstairs portion which was about 15 feet by 22 feet, he said it had a shower which the dancers used, and that they kept some of their costumes there and had access to the room during night club hours.

The manager, a woman, said she ran the club "completely" and supervised the dancers. She also confirmed they used the room for changing clothes, shampooing and styling their hair, eating, and making-up for the shows. She explained there was no other shower in the club and that the downstairs dressing room was very small and was inadequate for changing clothes. She said the girls changed costumes during their three "numbers" behind the stage curtain. In addition, the loft office apparently had an air conditioner which the other room did not. She said the office was used as a lounge by the girls. She confirmed there were transient dancers who did not stay long. They usually had four "permanent" dancers and all had access to the room during club hours.

The manager testified that no money was kept out anywhere during business hours. When she and the bartender finished their bookkeeping after 4:00 A.M. the office was always locked. She had a key and she would lock the door. She testified she used the desk in the office, putting envelopes with the girls' money in the drawer and sometimes the "rent" money in an envelope which appellant would retrieve. She kept her office supplies in the desk.

She said she, the appellant, and the custodian all had keys to the room.

The doorman, whose job it was to "screen" those entering the club, said he took breaks upstairs. During those few minutes he would use the TV monitor which was focused on the door to see who entered. He said the office was "nobody's," and the club's paperwork was done there by the manager. The desk was used for that work and for counting money. The girls often took showers there because they got "sweaty" dancing. The area was not locked during business hours; it was "a common area." He said he had access to the desk area as did the others. He named the same three people who had keys to the office.

Two dancers testified. One not only danced but was a parttime secretary, sometimes helping at the club. She said the door to the office was not locked during club hours. The girls kept their clothes there, and "everybody" used the showers. There were usually six to eight dancers. The other dancer, married to appellant, corroborated what the others had said and referred to the small space as an "employees lounge." She said the girls kept aspirin, Tylenol, Midol and other pills in the office. She said there were six dancers in January. She said that appellant had always kept his main business office in a different location. She also said the office was locked only after the night money was counted.

■ When arrested, appellant had opened the office door and was standing with his back to the detective who served the warrant. That officer sat with appellant on a couch while the second detective searched. He went immediately to the unlocked desk in the cluttered room and opened the middle drawer, removing from it a plastic package containing 0.031 grams of methamphetamine. During the 30 to 45 minutes period they were in the office, appellant talked, as one officer said, continually and "on his own." He appeared nervous. Both officers denied questioning him. The *Miranda* warnings had been adminis-

tered as soon as he was placed under arrest.

It is those statements which the State relied to prove possession. Appellant argues admission of the oral statements violates TEX.CODE CRIM.PROC.ANN. § 38.-22 § 5 (Vernon 1979), since they were not admissible to prove guilt but only for the purpose of impeachment. We find the statements did not result from interrogation; appellant was simply talking in a nervous manner. Section 5 would not limit the admissibility of the statements for the purpose of impeachment only. *Chambliss v. State*, 647 S.W.2d 257, 262 (Tex.Crim. App.1983). The sixth point of error is overruled.

## POSSESSION

To establish unlawful possession of a controlled substance the State must prove two elements: (1) that the accused exercised care, custody, control, or management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Sinor v. State*, 612 S.W.2d 591, 592 (Tex.Crim.App.1981) (citations omitted). There may be both sole and joint possession. *Id.* at 593. In the present case the State sought to prove sole possession by appellant.

In either situation the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Id.* (citations omitted). This affirmative link is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Id.* (citations omitted).

When there is an absence of direct evidence that an accused was in exclusive possession of contraband, then possession, if any, must be proven by circumstantial evidence. *Oaks v. State*, 642 S.W.2d 174, 179 (Tex.Crim.App.1982). When the officer in the present case searched appellant, he did not discover any controlled substance.

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Id.*

Incriminating statements may be an affirmative link to the contraband. *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim. App.1981). In this case the State introduced statements of appellant at the scene, the goal being to prove possession by showing appellant had the only key to the room.

Officer John Hester related how appellant told him of his elaborate security system, a TV monitor and listening device which "allowed no one except who he allowed to come up those stairs ..." The State asked:

Q. Did the defendant tell you this was, in fact, his office?

A. Yes. This was Mike's office, his private office to the establishment. All of his paperwork, and everything to him that was of importance was there.

We note at this point that no business records, letters, or other items to show business was conducted in this office were shown. The officers who testified all agreed the room was "cluttered." Two officers noticed the shower and a table. One officer recovered a purse containing pills (later shown to be prescription items) from the room.

When asked whether appellant indicated to the officer that he was the only one with a key to the office, the officer replied, "As far as he knew, he was the only one that could come and go to that office at any time, and he was the only one that had a key."

The second officer, who supervised the search said he heard appellant tell how he "went to great lengths so that no one could [get to him in the office] ... I did not hear him say anything about the keys." He did hear appellant say no one could come in unless he let them come in. He said he did

not doubt this was the appellant's office. He heard appellant say, "Nobody can come up here but me." He interpreted this to mean that appellant was the only one with a key.

Asked on cross-examination if his best [evidence to tell the jury] "is that you would assume that that packet of this very minimal amount of methamphetamine found in this desk was [appellant's]," he answered:

A. I found a packet of methamphetamine in a desk that belonged to [appellant] in a room that only he had access to.

Q. You are sure about that?

A. I am fairly sure.

The incriminating links upon which the State depends to show possession in appellant are: Presence at the scene. Purported sole access to the office where the contraband was found. Facial sores on appellant characterized by one officer as "methamphetamine sores." Appellant knew how to open a lock-box found in the desk. A security system designed to protect appellant from unwanted "guests." Appellant discussed with one officer getting treatment for drug use.

It is undisputed that appellant had no contraband on his person, nor was he under the influence of a controlled substance at the time of arrest. There were five women (dancers) waiting in his automobile while he went inside. One of them said he often treated them to lunch at a cafeteria and he had stopped by for some money left in the desk for him. There were no fingerprints from the plastic package introduced in evidence. He had an office in another building nearby, and two witnesses agreed his "main" office was at his apartment.

Here the State sought only to establish a relationship between appellant and the office. The theory seems to be that proof showing only appellant had access to the room equated with possession of the packet of contraband found in the desk drawer. To show this the State relied upon appellant having the only key. No further attempt was made to link appellant with the contraband. Appellant was not observed opening the desk drawer. The evidence was, at best, equivocal that appellant actually was the only one with a key to the room. Moreover, it remained unrefuted that other persons did frequent the room, whether they were "allowed" to do so by appellant or whether access resulted because at least two of them also had keys or because others used the room during club hours. It was shown that the manager and bartender used the desk each day when the club closed.

While it is plain the club and the room were under the control of appellant, that control is not synonymous with control of the contraband when appellant did not have sole access.

While the evidence may not be above suspicion when viewed in the light most favorable to the jury's verdict, we cannot conclude the evidence is sufficient to affirmatively link the appellant to the contraband seized from the desk drawer.

For these reasons the judgment is reversed and judgment of acquittal is ordered. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).