**Vincent C. SILMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–89–119–CR.**

Court of Appeals of Texas, Texarkana.

July 10, 1990.

Kenneth W. Hill, Marshall, for appellant.

Neil Kucera, Asst. Dist. Atty., Marshall, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Vincent C. Silmon appeals his conviction for aggravated possession of a controlled substance. The indictment charged that Silmon did "intentionally and knowingly possess a controlled substance, namely cocaine of less than four hundred grams but

at least twenty-eight grams." The indictment also contained an enhancement paragraph for a prior conviction of burglary. The jury found Silmon guilty and assessed punishment at thirty years in the penitentiary.

Silmon was convicted under Article 4476–15, § 4.04(c)[1] of the Texas Controlled Substances Act. (The offense was erroneously cited as Article 4476–15, § 4.03 in the indictment and the judgment.) This statute provides that a person commits an offense if he knowingly or intentionally possesses an aggregate weight of twenty-eight grams of cocaine or more. The punishment range under Article 4476–15, § 4.04(d)(1) is between five and ninety-nine years and a fine not to exceed $50,000. Silmon's punishment was enhanced by a prior conviction of burglary.

Silmon contends that the evidence was insufficient to prove beyond a reasonable doubt that he intentionally and knowingly possessed cocaine.

On April 25, 1989, at approximately 4:00 p.m., police officers executed a search warrant on a home located at 2510 University Street in Marshall, Texas. The house was leased to Michelle Traylor Adams. Upon entering the home, the officers found Silmon sitting in a chair in the living room of the house watching television and eating a salad. In the course of the search, they discovered approximately four rocks of crack cocaine on a table in the living room. On the floor under the table, the officers found two more rocks of crack cocaine. The total weight of this cocaine was 1.30 grams. Additional property seized in the living room area consisted of a straight razor blade, a shotgun, a .38 caliber pistol, a portable police scanner, and two handheld walkie talkies.

Silmon was arrested and subsequently searched. The search revealed no contraband on his person and $94.00 in his wallet. After arresting Silmon, the officers searched the entire house. They discovered an additional quantity of crack cocaine in the back bedroom inside a closet, on a top shelf, inside a paper bag which was placed inside another bag. It weighed approximately 31.31 grams, making a total of 32.61 grams of crack cocaine found in the house.

Silmon testified that on August 25, 1989, he went to see Adams to engage in sexual activity, that he gave Adams $30.00 to purchase a bottle of whiskey, that she said she would be back in ten to twenty-five minutes, and that approximately forty minutes later, while he was waiting for her to return, the police arrived. Silmon claims that he never knew the crack cocaine was in the room or in the house.

The standard of review for a challenge to the sufficiency of the evidence is whether, viewed in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989). If there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Butler,* 769 S.W.2d 234. The identical standard is applied to sufficiency challenges involving circumstantial evidence cases. *Christian v. State,* 686 S.W.2d 930 (Tex.Crim.App.1985).

■ Conflicts in evidence will not call for reversal if there is enough credible testimony to support the conviction. The jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions. It is the duty of the jury to pass on the weight of the testimony and the credibility of the witnesses. *Losada v. State,* 721 S.W.2d 305 (Tex.Crim.App.1986); TEX.CODE CRIM.PROC.ANN. ART. 38.04 (Vernon 1979).

■ The Court of Criminal Appeals has held that to establish unlawful possession of a controlled substance the State must show (1) that the accused exercised care, control and management over the contraband and (2) that the accused knew the

---

**1.** This section is now found in Tex. Health &   Safety Code Ann. § 481.115 (Vernon 1990).

matter possessed was contraband. *McGoldrick v. State*, 682 S.W.2d 573 (Tex.Crim. App.1985). Furthermore, whether the State's theory is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Christian*, 686 S.W.2d 930.

Where there is an absence of direct evidence that a narcotic was in exclusive possession of an accused, then possession, if any, must be proved by circumstantial evidence. *Oaks v. State*, 642 S.W.2d 174 (Tex.Crim.App.1982). A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt. *Bryant v. State*, 574 S.W.2d 109 (Tex.Crim.App. [Panel Op.] 1978).

The most damaging testimony against Silmon was that of Michelle Adams. Adams was also charged with possession of cocaine, and as such was an accomplice witness. The jury, however, was not charged that it was required to find sufficient evidence from other sources besides Adams tending to connect Silmon with the commission of the offense. No objection was made to the failure to charge the jury on accomplice testimony, and the omission of such a charge has been held not to be fundamental error. *McCloud v. State*, 527 S.W.2d 885 (Tex.Crim.App.1975). Under the standard laid down by the court in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984), this omission does not constitute egregious harm.

Silmon does not contend on appeal that the evidence is insufficient from other sources besides the accomplice to connect him with the commission of the offense. To view the evidence under a different standard than the jury was instructed to view it would seem to be an unfair evaluation of the jury's verdict. However, the court in *Hammonds v. State*, 166 Tex. Crim. 499, 316 S.W.2d 423 (App.1958), ruled that a failure to object to the trial court's omission from the charge that the accomplice witness required corroboration did not preclude the appellate court from reviewing the evidence on that basis. The opinion in the *Hammonds* case does not set forth the exact point of error made by the defendant on appeal, but we would assume that the matter of the lack of sufficient evidence to corroborate the accomplice witness was the specific point of complaint rather than a general challenge to the sufficiency of the evidence as we have in the present case. Our review will be solely on the basis of the general sufficiency of the evidence without considering the effect of Adams' being an accomplice because this matter was not raised on appeal.

The mere presence of a defendant at the scene of an offense or even knowledge of an offense does not make one a party to joint possession. *Oaks v. State*, 642 S.W.2d 174. When an accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Cude v. State*, 716 S.W.2d 46 (Tex.Crim.App.1986). Thus, we must examine the evidence to determine if it affirmatively links Silmon to the crack cocaine in such a manner and to such an extent that a reasonable inference may arise that Silmon knew of the existence of the crack cocaine and that he exercised control over the contraband.

Factors in this case that can be considered in determining whether an affirmative link exists are Silmon's presence at the time the place was searched (*See Damron v. State*, 570 S.W.2d 933 (Tex.Crim.App. [Panel Op.] 1978)), Silmon's close proximity to the drugs found in the living room (*See Williams v. State*, 498 S.W.2d 340 (Tex. Crim.App.1973)), Adam's testimony concerning Silmon's occupancy of the premises (*See Williams*, 498 S.W.2d 341), the location of some of the rocks of cocaine found in the living room in Silmon's plain view (*See Hughes v. State*, 612 S.W.2d 581 (Tex. Crim.App. [Panel Op.] 1981)), the amount

of cocaine found near Silmon being large enough to indicate that he knew of its presence (*See Pollan v. State*, 612 S.W.2d 594 (Tex.Crim.App. [Panel Op.] 1981)), and the conduct of Silmon as described by Adams was such to indicate his knowledge and control. (*See Pollan*, 612 S.W.2d 594).

■ The most critical evidence was the testimony of Adams. She testified that she lived in the residence where the cocaine was found, that Fred Williams was the father of her children and that he lived at that address off and on during that year, that Fred Williams and Silmon were running a "dope dealing business," that Silmon had lived in the house sometimes and was living there on the date that the cocaine was found, that Silmon had access to the entire house, that Silmon was not employed but obtained his money from selling drugs, that she had observed him selling crack cocaine at the house on an estimated thirty occasions, and that on the day of his arrest people had come to the house and talked to Silmon about drug transactions.

There was also evidence that Silmon was "high," but it was not shown whether this was the result of his taking illicit drugs or alcohol, or for some other reason. There was also evidence that an informant had reported sales of crack cocaine from the house and that the police had previously observed a large number of people going in and out of the house.[2] Also, a man came into the house wanting to buy cocaine while the police were there.[3]

The difficult issue in this case is whether the evidence linked Silmon to the cocaine found in the bedroom. Generally, cases of this nature require direct testimony that the defendant had occupied the bedroom or that his fingerprints or his clothing or other belongings were found in the bedroom. See *Damron v. State*, 570 S.W.2d 933.

However, the testimony that Silmon and Fred Williams were selling a large volume of cocaine out of the house, along with the other circumstances established by evidence, creates a strong inference that the large amount of cocaine found in the house was possessed jointly by Silmon and Fred Williams. We hold that the evidence was sufficient to permit the jury to find beyond a reasonable doubt that Silmon intentionally and knowingly possessed cocaine.

The judgment of the trial court is affirmed.

---

2. An officer described the activity at the house two days earlier as "a situation where there was a very high volume of traffic, where people were coming to the house for various short periods of time, exiting their vehicle, going to the door of the house, entering, staying for short periods of time and then leaving. There was even individuals that were standing out in the street, during that period of time that were actively flagging people down and either obtaining money from them and going to the house or directing them from the cars to the house."

3. On cross-examination about this occurrence, the officer testified that the man said, "Somebody had told him that Fred would have some rocks."