## Albert Lee McGUILL, Appellant,

### v.

### STATE of Texas, Appellee.

### No. 13–84–336–CR.

Court of Appeals of Texas,
Corpus Christi.

June 28, 1985.

---

Douglas Tinker, Corpus Christi, for appellant.

Wiley W. Cheatham, Cuero, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Appellant was convicted of possessing more than four ounces but less than five pounds of marijuana in violation of TEX. REV.CIV.STAT.ANN. art. 4476–15 § 4.051(b)(3) (Vernon Supp.1985), in a trial before the court. The trial court assessed punishment at five years in the Texas Department of Corrections, probated for the same period, and a fine of $1,000.

In his first three grounds of error, appellant challenges the validity of the warrantless search which uncovered the illegal substance. In his fourth ground of error, appellant challenges the sufficiency of the evidence to sustain the conviction. We address his fourth ground first and set forth in detail the facts of the case as they relate both to appellant's guilt and the warrantless search.

Jimmy Hodges, Refugio County Sheriff, testified that, on November 30, 1983, he received a telephone message in reference to the possible whereabouts of Murford Hodge. Hodge had apparently been indicted by the Gonzales County Grand Jury and a warrant had been issued for his arrest. In response to the telephone call, Sheriff Hodges sought assistance from the Goliad and Bee County Sheriff Departments in setting up roadblocks at various locations on FM 2441, State Road 183, and McGuill Road. These roads are located in an area where Refugio, Bee and Goliad Counties join.

After setting up the road blocks and conferring with officers from the other counties involved, Sheriff Hodges decided that, since his officers were already in the area, they ought to "take a look at a cabin that was located on the [Joyce] McGuill property that my information led me to believe" might contain Murford Hodge. Sheriff Hodges telephoned J.D. McGuill, who owned the property adjoining the Joyce McGuill property, to seek his assistance.[1] J.D. McGuill then met the officers

---

1. If there is any relation between J.D. McGuill and Joyce McGuill, it is not disclosed in the record.

by a gate on his property and took the officers onto the Joyce McGuill property in his Suburban. In all, approximately eight police officers followed.

As the officers approached the Joyce McGuill property, they observed a pick-up truck parked across a cattle guard. Here the officers apparently stopped and discussed how to proceed down a water covered road. As they were standing around the pickup truck, appellant walked up to them and asked what was going on. Hodges responded that they had information that Murford Hodge might be in the area. Appellant said he had not seen Hodge. Appellant also said that he had just come from a cabin on the property; Hodges asked if the officers could go to the cabin and take a look around. Appellant said they could and walked down to the cabin with the officers. Appellant stated that a truck belonging to Murford Hodge was at the cabin. He told Sheriff Hodges that Murford's wife had brought the truck to the cabin to store it. Appellant told the sheriff that he was cleaning the cabin and getting it ready for hunting season. As they approached the cabin, Sheriff Hodges again asked if it would be all right to go in the cabin and look around. Appellant said "sure". Appellant then walked to the back door and unlatched the screen door, and then unlocked the padlock on the wooden door. The sheriff then cautiously entered the house.

The sheriff testified that "right after I stepped in the room there was a real strong smell of burnt marijuana very strong in the room." He observed a set of scales and then a paper sack containing rolling papers and marijuana pipes. The officers then searched the house. Officer Hons, who had crawled up on the top of a haystack (apparently located on the back porch), called out that he had found a rather large aluminum pot "that had tape around the lid." Hons opened the aluminum pot and it was full of baggies of marijuana. At that point, one of the officers advised appellant of his rights and informed him that he was under arrest.

Edward Hons, a chief deputy with the Bee County Sheriff's office, testified that he heard appellant give Sheriff Hodges permission to check around the cabin. He also heard appellant give Hodges permission to look inside the cabin. Hons said that he had observed a stack of hay on the partially enclosed porch of the cabin and that he stepped out back and climbed on top of the hay to see if there was a hiding place behind the front portion of the bails of hay. When he climbed on top of the hay, he found an aluminum pot which had tape across the lid. Hons further testified that, although the pot was sealed, it smelled like marijuana. The pot was handed down to Chief Deputy Tony Garcia who placed the pot on a table. Hons continued to check for anyone possibly hiding in the hay.

Hons testified that, at some point after all of them left the house, Refugio County Deputy Brown advised Hons that he had found a baggie of marijuana elsewhere on the property.

Willie Brown, Deputy Sheriff of Refugio County, testified essentially to the same facts as Sheriff Hodges and Deputy Hons as to the facts leading to the search of the house. Brown searched the area outside the house. When he returned to the house, Deputy Flores was advising appellant of his rights. As they walked away from the house, Deputy Brown found a baggie of marijuana. The package was dry and lying on top of the grass, even though it was in a swampy area. Brown could not tell if it had rained at the cabin the day before but suggested that it had rained quite a bit because of the standing water. The grass was not heavy enough to support the package. Brown opined that, "When I picked it up, it was dry and it was lying on top of the grass as, you know, as if it had just been thrown there. There was no moisture on it." He further testified that the package was discovered "in the general area of the same path the defendant was coming from when we first observed him." He further testified that it had not rained on

the day of the arrest, but maybe had rained the day before or two or three days before.

Appellant's wife then testified that several people had keys to the house. She testified that she and her husband did not have a key to the house in the two weeks before appellant's arrest, until the evening prior to appellant's arrest, when Sharon Hodge returned a borrowed key to her.

Appellant then testified that he did not live in the house where he was arrested. He stated that Sharon Hodge had a key to the house until November 9, 1983. He further testified that, while there was a screen door on the porch, the screen was in bad condition and that it was possible to walk onto the porch whether or not the screen door was open. Appellant testified that the marijuana was not his and that he had no idea it was there. He also denied any knowledge of the baggie of marijuana found in the pasture. Appellant said he walked into the house with the officers but that he did not smell marijuana. He said that, prior to the officers' arrival, he had been in the house. He admitted that the aluminum pot was his and that it was kept at the house. That day, he had hardly spent anytime at the house except to check the water, dust the beds, and to make preparations for hunters that were coming that weekend.

As to appellant's knowledge of marijuana odor, the following testimony was elicited:

Q: (by prosecutor) You do know what marijuana smells like, don't you?

A: (appellant) I'm not an expert, but I guess I would.

Q: Well, I am just asking you whether or not you as an individual would recognize marijuana if you smelled it?

A: Probably.

■ In order for the evidence to be sufficient, the State had to show that appellant knowingly or intentionally possessed the marijuana. Knowing or intentional possession is established if the State proves beyond a reasonable doubt that (1) the accused exercised care, custody, control, or management over the contraband, and (2) the accused knew that the matter possessed was contraband. The State's burden is met by the introduction of additional facts and circumstances which indicate the accused's knowledge and control of the contraband. These facts and circumstances must affirmatively link the accused to the contraband and create a reasonable inference that the accused knew of the contraband's existence and that he exercised control over it. *Dickey v. State*, 693 S.W.2d 386 (Tex.Crim.App.1984). *Rodriguez v. State*, 496 S.W.2d 46 (Tex.Crim. App.1973).

■ Possession means more than "being where the action is; it involves the exercise of dominion and control over the thing actually possessed." *McGoldrick v. State*, 682 S.W.2d 573 (Tex.Crim.App.1985). Mere presence, alone, at a place where narcotics or dangerous drugs are being used or possessed by others does not justify a finding of joint possession. *McGoldrick*, 682 S.W.2d at 578.

In *Sewell v. State* 578 S.W.2d 131 (Tex. Crim.App.1979), the Court of Criminal Appeals wrote:

"This Court has carefully reviewed the 'affirmative link' in numerous cases. We have held that even when the defendant is present at the scene, there must be additional facts to show knowledge and control. (citations omitted) For example, in *Hausman v. State*, 480 S.W.2d 721 (Tex.Cr.App.1972) we concluded that even though officers observed persons smoking around a campfire and appellant was found sleeping by the fire with a bag of marijuana one foot from his head, the evidence was insufficient to show exercise of control over the substance."

Various facts and circumstances can establish the requisite affirmative link between the accused and the contraband, and while every circumstantial evidence case must be judged by its own facts, the presence or absence of these various factors often determines whether the requisite link is sufficient. The link is often sufficient if the

accused was under the influence of the contraband, made an attempt to flee, acted suspiciously, or was located in a place where the contraband was readily accessible. Likewise, the link is usually sufficient if the contraband was found in plain view, on the accused, or in areas "private" to the accused. Whether the contraband omits a strong odor has also been a factor. *See Marsh v. State,* 684 S.W.2d 676 (Tex.Crim. App.1984); *McGoldrick v. State,* 682 S.W.2d 573 (Tex.Crim.App.1985); *Christopher v. State,* 639 S.W.2d 932 (Tex.Crim. App.1982); *DeShong v. State,* 625 S.W.2d 327 (Tex.Crim.App.1981); *Dempsey v. State,* 667 S.W.2d 801 (Tex.App.—Beaumont 1984, pet. ref'd); *Siroky v. State,* 653 S.W.2d 476 (Tex.App.—Tyler 1983, pet. ref'd).

While the cases indicate that some of these factors *alone* will not support a finding of the affirmative link, the circumstantial case invariably becomes legally sufficient when these factors appear in concert.

■ In the present case, there is evidence that the odor of marijuana was strong, and the appellant, by his own testimony, probably knew the odor of the marijuana. There is also evidence that the smell of burnt marijuana was in the house where appellant admittedly had just been. The contraband was found in appellant's aluminum pot. Drug paraphernalia was present in the house. Additionally, a baggie of marijuana was found outside the house in an area where appellant was seen and the evidence was such that a reasonable inference could be drawn that this marijuana had been recently disposed of in that location. Moreover, appellant, who testified in his own defense, did not even suggest an explanation for that odor; in fact, appellant said he did not smell any marijuana. But when asked if he had any sinus problems appellant said that he did not. Thus given the contradictions between the officers' testimony and appellant's, a rational trier of fact could believe that appellant was not being truthful. Viewed in this context, we conclude that the evidence is sufficient to allow a rational trier of fact to determine the essential ele-

ments of the offense beyond a reasonable doubt. Appellant's fourth ground of error is overruled.

In his first three grounds of error, appellant challenges the legality of the search which uncovered the hidden marijuana. Prior to trial, appellant filed a motion to suppress the evidence alleging that the police intruded upon appellant's premises without lawful authority, without probable cause, without a valid search warrant, and without effective consent. A pretrial hearing was held on February 23, 1984, but a transcription of the court reporter's notes from that hearing contains nothing more than the testimony of one witness. The statement of facts contains nothing to show what complaint appellant raised in the trial court. Nonetheless, the written motion to suppress which is contained in the transcript was denied in writing on February 23, 1984, and we will presume that the specific grounds contained in that motion were presented to the trial court.

It is well established that a search conducted without a warrant based on probable cause is, per se, unreasonable and that the warrant requirement is subject only to a few well-delineated exceptions. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Before consent can be effective, however, the prosecution must prove by clear and convincing evidence that the consent was given freely and voluntarily. The State has the burden of showing that the consent was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Evans v. State,* 530 S.W.2d 932 (Tex.Crim. App.1976). Whether consent to search was voluntary is a question of fact to be determined from the totality of the circumstances. *Fancher v. State,* 659 S.W.2d 836 (Tex. Crim.App.1983).

■ Appellant did not testify at the pretrial suppression hearing. At trial, appellant testified but never asserted that his consent to allow the officers to search the house was somehow the result of coercion or pressure. It appears to be appellant's

position that, before the consent could be effective, the police had to inform appellant that he had the right to refuse their request. There is no such requirement placed on law authorities. *Schnekloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Paulus v. State*, 633 S.W.2d 827 (Tex.Crim.App.1982); *Armstrong v. State*, 550 S.W.2d 25 (Tex.Crim. App.1976).

The State's evidence shows that appellant consented to the search. There is nothing to suggest that the consent was coerced or equivocal. The testimony supports the trial judge's conclusion that the consent was freely and voluntarily given.

◼ Appellant also contends that the consent was ineffective because the officers were not legally on the property when consent was given. It does not seem logical that the police should be required to have a warrant or probable cause as a prerequisite to obtaining effective consent. With such warrant or probable cause, consent of the accused would not be required at all. As such, appellant's first three grounds of error are overruled.

The judgment of the trial court is AFFIRMED.