Virginia MARABLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–90–009–CR.

Court of Appeals of Texas, Texarkana.

Nov. 13, 1990.

Rehearing Overruled Dec. 11, 1990.

Jimmy White, Mount Pleasant, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Virginia Marable was convicted of possession of more than fifty pounds but less than two hundred pounds of marihuana in a joint trial with her husband, James, and her daughter, Mary. Punishment was set by the jury at thirty years confinement.

Marable appeals the conviction, contending that it is not supported by sufficient evidence and that the trial court erred in allowing improper jury argument, refusing a requested jury charge, and denying a motion for mistrial. We find the evidence insufficient and reverse the judgment.

In August of 1989, while flying in a light plane near Mount Vernon, a game warden saw vegetation that he recognized as marihuana. Based on his statement, a warrant was obtained and officers searched the property. The officers found two fields that had been planted in marihuana. The plants were approximately ten feet tall, planted in neat rows, and were screened from view by river weeds and a row of corn. The officers harvested the plants, obtaining approximately ninety pounds of saleable marihuana. The two patches contained a total of 1,527 plants.

The marihuana patches were located on property rented by Mary Marable, the daughter of James and Virginia Marable, about two years before the issuance of the search warrant. All of the Marables resided on the property. The property contains about seventy acres. The largest patch of marihuana was located about eight hundred feet from the Marables' residence and approximately twenty feet behind a large dairy barn. The largest of the two marihuana patches was visible from the barn. The officers found between about 1,500 to 2,000 used starter pots near the barn. Also near the barn was a tall, homemade sprinkler system that had been painted in camouflage colors. An off-road three-wheel vehicle was parked beside the Marables' mobile home, and what witnesses described as a well-worn three-wheeler trail ran from the house around the barn to the marihuana patch.

Marable first contends that the evidence is insufficient to support a finding that she possessed the marihuana. The relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Crim.App.1989). When the State's evidence is wholly circumstantial, as it is here, the evidence must exclude every reasonable hypothesis except the defendant's guilt; otherwise, a guilty verdict would not be a rational finding. *Freeman v. State,* 654 S.W.2d 450 (Tex.Crim.App. 1983).

When charged with possession of a controlled substance, the State must prove that the defendant exercised care, control, or management over the substance and that he knew the object he possessed was contraband. *Rodriguez v. State,* 635 S.W.2d 552 (Tex.Crim.App. [Panel Op.] 1982). Possession of the contraband need not be exclusive, and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *Rodriguez v. State,* 635 S.W.2d 552. However, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of its existence and that the accused exercised control of it. This link is normally established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *McGoldrick v. State,* 682 S.W.2d 573 (Tex. Crim.App.1985).

Despite the fact that the Marables were having severe financial difficulties and that they were only renting the property, they constructed a large greenhouse on the property. There was evidence that James and Mary were involved in the construction of the greenhouse. There was no evidence that Virginia was involved with the con-

struction. As previously stated, approximately 1,500 to 2,000 plant starter cups were found near the barn. The cups had been used and were the type commonly used to start small seedlings. There is evidence that there were only two cultivated areas on the farm, and that the marihuana had been planted in distinct rows, which had been watered and fertilized regularly. A single row of corn had also been planted and located so that it obstructed the visibility of the larger marihuana patch from the road. The corn was planted between the marihuana patch and a private farm road that paralleled one side of the property. As noted earlier, a three-wheel off-road vehicle was found parked next to the Marables' residence, and a well-defined three-wheeler trail led from the residence around the barn to the largest marihuana patch. A water hose ran from the barn to the marihuana, and there were other hoses designed for use as sprinklers. There was also a tall, homemade pipe sprinkler painted in camouflage colors beside the barn, only six or seven feet from the marihuana.

The evidence thus indicates that two patches of marihuana were being carefully grown and tended on property controlled and possessed by the Marables. The Marables had been in sole possession of the property during the entire period of time that the plants had been growing. There was evidence that James and Mary Marable built the greenhouse. Although there was evidence that Marable was a farmer, no evidence indicated that he was in the nursery or greenhouse business. The evidence suggests that the marihuana plants had been transplanted from pots into neat rows and that the majority of the transplants occurred within eight hundred feet of the Marables' residence and within twenty feet of the barn. Moreover, the Marable's water bill averaged more than three times the minimum for the first eight months of 1989.

The property owner, Hillman, testified that he had told James Marable that his (Hillman's) trash barrel had rotted out and that he (Hillman) was going to have to haul his trash to a ravine (near where the marihuana was planted). Hillman further testi-fied that he later discovered that his trash had been picked up and that two new trash barrels had been substituted for his old one. Hillman assumed that James Marable had replaced the barrels, since James was the only person Hillman had told about the matter.

Additionally, Glen Bolt, an inmate of the jail, testified that while James Marable was in jail that James had said that he "had people harvesting his other marihuana, having it moved out" and that he would bring Bolt some marihuana to the jail. Bolt testified that Marable later brought a paper sack with marihuana to the jail and dropped it in the outside dumpster in accordance with their conversation.

Although this testimony does tend to link James Marable to the planting, care, and control of the marihuana, it entirely fails to address any relationship between Virginia Marable and the contraband. There is only minimal evidence about Virginia Marable. There is testimony that she lived on the property. There is also testimony that she provided some herbs and tomato plants to some of her co-workers. A neighbor, when asked which of the Marables he had seen working in or around the greenhouse, specifically stated that he had seen James and Mary, but that he had never seen Virginia at the greenhouse.

This testimony does not prove anything beyond mere presence on the property. No testimony or evidence suggests that she attempted to encourage or aid any other person in committing the offense. The State did not introduce any evidence of conduct suggesting that the wife exercised control over the marihuana or that she aided or encouraged her husband in his possession of the marihuana. The court found insufficient evidence to support the conviction in *Brady v. State,* 771 S.W.2d 734 (Tex.App.–Fort Worth 1989, no pet.) In that case, the Fort Worth court considered a situation in which a husband was growing marihuana in a family greenhouse. The State failed to produce any evidence that the wife knew that the marihuana was in the greenhouse or that she aided or encouraged her husband in his

possession of the marihuana. *Citing, Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim. App.1986).

We find the evidence insufficient to support the jury's verdict. The judgment of conviction is reversed and reformed to show acquittal.