IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-471-CR


AND


NO. 3-91-502-CR



JAMES WALTER BRENNAN,



 





NO. 3-91-500-CR


AND


NO. 3-91-501-CR



SHIRLEY BRENNAN,



 APPELLANTS


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT



NOS. CR-90-325; CR-90-326; CR-90-319; & CR-90-320,



HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING



 




 These appeals are taken from appellants' convictions for possession of marihuana
of more than four ounces but less than five pounds, and for possession of methamphetamine of
less than twenty-eight grams. The cases were jointly tried in a bench trial on pleas of not guilty. 
The trial court found each appellant guilty of the offenses tried and assessed punishment in the
possession of marihuana cases at ten years' imprisonment and a thousand dollar fine. In the
possession of methamphetamine cases, each appellant was assessed ten years' imprisonment. The
imposition of sentences was suspended in each case and the appellants were placed on probation
subject to certain conditions. These appeals followed.

 In each of the four appeals, the appellants in a single point of error challenge the
sufficiency of the evidence to sustain the conviction. On July 12, 1990, Deputy Norman De La
Rosa of the Hays County Drug Task Force received an anonymous tip that James Brennan was
growing approximately twenty-five marihuana plants behind his residence at 11501 Oak Branch
Drive. De La Rosa and Deputy Bill Huddleston went to the address about 5:30 a.m., entered an
open field, and travelled down a fence line until they got to the site. When it got "light," they
observed a patch approximately eight by twelve feet containing what appeared to be marihuana
plants from five to eight feet tall. A search and an arrest warrant was then secured by Officer
Penny Dunn.

 Upon arriving at 11501 Oak Branch Drive, the law enforcement officers, armed
with the warrant, found no one at the residence. Some thirty yards from the rear of the residence
and in a clump of trees, the officers discovered approximately twenty-five marihuana plants
ranging from three to eight feet tall. A water hose ran from the well at the side of the residence
to the growing plants bordered by rocks. A small chair was positioned close by. At the garden
site, the officers also found soil and fertilizer in a bag, gardening tools, nylon rope and stakes for
the plants.

 Officer Dunn testified that she searched the children's room, (1) kitchen, dining room
and living room. On a coffee table in the living room she found some narcotic paraphernalia such
as pipes, a bong, and a brown paper sack filled with what Dunn described as marihuana. (2)

 Lieutenant Don Montague of the Hays County Sheriff's Department testified that
he conducted a search of the master bedroom. He related that based on his experience and
training he was able to identify marihuana. On a bedside table in the master bedroom, Montague
observed what appeared to him to be chopped up marihuana leaves, drying. (3) Montague also
observed a tray-looking device which "had what we felt like was residue that was found on the
headboards." (4)

 The officers opened a large locked closet (5) off the master bedroom and found two
bags of marihuana on a shelf next to a set of triple-beam scales, a small clear bottle thought to
contain a controlled substance, and three plastic baggies in a tobacco pouch. The officers also
found in the closet a gam board with connotations believed to be related to narcotics, and two
undated videotapes of individuals engaging in various sexual acts. The videotapes were
introduced as State's exhibits nos. 34 and 35. Two separate couples appeared at different portions
of each videotape. One couple appeared on both tapes. Officer Dunn identified appellants as the
"people" in a portion of State's exhibit no. 34, played for the trial court. Dunn made no mention
of the other couple featured on that tape nor did she refer to State's exhibit no. 35. Dunn
identified a couch that appeared on one of the undated videotapes as a couch seen in the living
room of the search house. She was unable to establish the location where the videotapes were
filmed.

 A computer found in the house contained a "Garden Maintenance Performance
Log" listing the dates of watering and fertilizing. The log made no reference to marihuana or
narcotics.

 Dennis Ray Ramsey, chemist/toxicologist with the Texas Department of Public
Safety, testified that certain substances were submitted for analysis by Deputy Huddleston (who
had participated in the search). The chain of custody was completed. Ramsey testified that one
substance submitted to him, shown to be the plants taken from the garden, was three pounds and
five ounces of marihuana. (6) The two bags of substance taken from the locked closet off the master
bedroom was shown by chemical analysis to contain 4.17 ounces of marihuana. The clear bottle
found in the locked room was shown to contain seven milligrams of methamphetamine, including
adulterants and dilutants. A trace of methamphetamine was found on one of the plastic baggies
discovered in the closet. The chemist was unable to determine its weight.

 The State introduced into evidence a warranty deed with a vendor's lien showing
that lot sixteen (16) and 0.186 acres of land, more or less, out of lot seventeen (17), Oak Run
West, a subdivision in Hays and Travis Counties was conveyed to "James W. Brennan, Sr. and
wife, Shirley B. Brennan" of Travis County on May 31, 1985. The deed was filed for record on
June 12, 1985. The State produced no further evidence to connect the above described premises
to 11501 Oak Branch Drive in Hays County. (7) The appellants rested with the State.

 The standard for reviewing the sufficiency of the evidence to sustain a conviction
is whether, viewing the evidence in the light most favorable to the court's judgment in a bench
trial, any rational trier of fact could have found beyond a reasonable doubt the essential elements
of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319 n.12 (1979); Valdez v. State, 776
S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 963 (1990). The standard for
review is the same in both direct and circumstantial evidence cases. Herndon v. State, 787
S.W.2d 408, 409 (Tex. Crim. App. 1990); Christian v. State, 686 S.W.2d 930, 934 (Tex. Crim.
App. 1985).

 A conviction based upon circumstantial evidence cannot be sustained if the
circumstances do not exclude every other reasonable hypothesis except that of the defendant's
guilt. Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987); Burns v. State, 676
S.W.2d 118, 120 (Tex. Crim. App. 1984). Proof which amounts only to strong suspicion or mere
probability of guilt is insufficient to support a conviction. Humason, 728 S.W.2d at 366; Moore
v. State, 640 S.W.2d 400, 403 (Tex. Crim. App. 1982). If there is a reasonable hypothesis other
than the guilt of the accused, then it cannot be said that guilt has been shown beyond a reasonable
doubt. Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); Anderson v. State, 701
S.W.2d 868, 872 (Tex. Crim. App. 1985). (8)

 Where an accused is charged with the unlawful possession of a controlled substance
such as marihuana or methamphetamine, the State must prove two elements: (1) that the accused
exercised care, control, custody, or management over the contraband, and (2) that the accused
knew the matter possessed was contraband. Martin, 753 S.W.2d at 387; Whitworth v. State, 808
S.W.2d 566, 568 (Tex. App.--Austin 1991, pet. ref'd). "Possession" means actual care, custody,
control, or management. See Tex. Health & Safety Code Ann. § 481.002(38) (West 1992). 
"Possession" is a voluntary act if the possessor knowingly obtains or receives the thing possessed
or is aware of his control of the thing for a sufficient time to permit him to terminate his control. 
See Tex. Penal Code Ann. § 6.01(b) (West 1974). Such definition in the penal code applies to
a prosecution under the Controlled Substance Act. Tex. Penal Code Ann. § 1.03(b) (West 1974). 
The mens rea requirement of a possessory offense is knowledge by an accused that his conduct
or the circumstances surrounding his conduct constitutes possession of a controlled substance. 
Tex. Penal Code Ann. § 6.03(b) (West 1974); Humason, 728 S.W.2d at 365; Watson v. State,
752 S.W.2d 217, 222 (Tex. App.--San Antonio 1989, pet. ref'd).

 Possession of a controlled substance need not be exclusive, and evidence that shows
the accused jointly possessed the controlled substance with another is sufficient. McGoldrick v.
State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); Oaks v. State, 642 S.W.2d 174, 176 (Tex.
Crim. App. 1982). Whether the theory of the prosecution is sole or joint possession, the evidence
must affirmatively link the accused to the contraband by a showing that indicates the accused's
knowledge and control of the contraband. Waldon v. State, 479 S.W.2d 499, 501 (Tex. Crim.
App. 1979). This is particularly true when the accused is not in exclusive possession of the place
where the contraband is found. In such cases there must be additional independent facts and
circumstances that affirmatively link the accused to the controlled substance in such a manner that
it can be concluded that he or she had knowledge of the contraband as well as control over it. 
Martin, 753 S.W.2d at 387; Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981). 
The burden of showing an affirmative link or links rests on the State. Damron v. State, 570
S.W.2d 933, 935 (Tex. Crim. App. 1978). Mere presence of an accused at the scene of an
offense does not make him a party to joint possession. Oaks, 642 S.W.2d at 177. In Rhyne v.
State, 620 S.W.2d 599 (Tex. Crim. App. 1981), the court stated: "The mere presence of a
defendant at the scene of an offense or even knowledge of an offense does not make one a party
to joint possession." Id. at 601 (emphasis added). Further, the fact that defendant owns or has
rented premises upon which narcotics are found, if occupied by others, is not usually sufficient
in and of itself to justify a finding of joint possession. Id. Possession means more than being
where the action is; it involves the exercise of dominion and control over the thing allegedly
possessed. Oaks, 642 S.W.2d at 177.

 The issue then is whether the State, in the instant case, established such independent
facts and circumstances to affirmatively link appellants to the marihuana or methamphetamine by
sole or joint possession. In this regard, we have reference only to the marihuana found in the
"garden" near a wooded area and the marihuana and methamphetamine found in the locked closet
off the master bedroom. These were the only substances shown to have sufficient weight to fall
within the prohibited limits.

 The State produced evidence that lot 16 and part of lot 17 in the Oak Run West
subdivision had been conveyed to "James W. Brennan, Sr. and wife, Shirley B. Brennan," in
1985, some five years prior to the alleged offense. The names in the deed are similar to those of
appellants, but the State did not tie the legal description to 11501 Oak Branch Drive, even if it can
be argued that both are located in the Oak Run West Subdivision. Deputy Huddleston testified
that during the search personal papers were seized, which was standard procedure. When
Huddleston was asked if any of the seized items indicated who lived at 11501 Oak Branch Drive,
the trial court sustained the hearsay and best-evidence-rule objections, but it offered the prosecutor
the opportunity to introduce the papers or items. The prosecutor did not pursue the matter with
Huddleston. When Officer Dunn was asked if she saw appellants' names on any piece of property
at the location, the trial court sustained the same objections, and the State took no further action. 
The State did not introduce city or telephone directories, utility records, employment files, tax
rolls, or other documents to show that appellants lived at the address in question. There was no
showing that men's and women's clothing were found in the master bedroom or elsewhere in the
house. Officers did observe photographs of appellants in the house, independent of the videotapes
found in the locked closet or room, but these observations were not developed in any detail. 
Neither appellant was present at the commencement of the search. It appears that during the
search the officers summoned Shirley Brennan to the location. Officer Penny Dunn testified that
when Shirley Brennan arrived she inquired of this appellant whether she lived there. Appellants'
counsel objected that there was no showing Shirley Brennan had been "mirandized" and offered
to take Dunn on voir dire examination to establish that the officers had asked appellant to come
to the residence--"a kind of custody." The trial court immediately sustained the objection and the
prosecutor dropped the subject.

 The record is not clear as to the size of the house or to those individuals that might
have lived there. One of the officers made a diagram of the house. When the prosecutor sought
to offer it into evidence, appellants' counsel objected on the basis that the diagram made reference
to the "James Brennan's Resident," a matter which had not yet been established. The objection
was sustained. The prosecutor did not offer to eliminate or redact the reference. He did not
pursue the matter and the diagram was not admitted into evidence. Officer Dunn testified that
there was what appeared to be a children's bedroom, but "they" were not present at the time of
the search. (9)

 In its brief, the State calls attention to the fact that the appearance bond executed
by James Brennan reflects his address as 11501 Oak Branch Drive and that his next of kin was
Shirley Brennan. The record does not show that this bond was introduced into evidence or that
the trial court took judicial notice of the same. The State cites Langford v. State, 632 S.W.2d
650, 651 (Tex. App.--Houston [14th Dist.] 1982, no pet.) to support its contention that the bond
may be considered evidence. In Langford, the bail bond was actually introduced into evidence. 
In addition, one officer testified from personal knowledge that the defendant lived at the address
in question. Another officer observed mail at the house addressed to the defendant. Moreover,
the evidence showed that the defendant led the officers to his house. Langford does not support
the State's argument. The State's evidence is meager at best to establish appellants owned or lived
at the address in question. As noted earlier, the fact that a defendant owns or has rented the
premises upon which contraband is found, if occupied by others, is not usually sufficient alone
to justify a finding of joint possession. Rhyne, 620 S.W.2d at 601; Williams v. State, 498 S.W.2d
340, 341 (Tex. Crim. App. 1973); Hoss v. State, 735 S.W.2d 899, 902 (Tex. App.--Houston [14th
Dist.] 1987, no pet.); Campos v. State, 716 S.W.2d 584, 586 (Tex. App.--Corpus Christi 1986,
no pet.).

 Moreover, some of the more commonly recognized affirmative links are not present
in the instant cases. Appellant Shirley Brennan was taken into custody after she arrived at the
premises at the request of the officers. Appellant James Brennan was arrested at his place of
employment and taken to the Sheriff's office. There was no showing that they tried to flee, made
furtive gestures, made incriminating statements at the time of their arrest, or had contraband on
their persons, or were under the influence of any narcotic. If they were searched incident to their
arrests, there was no showing that they had keys to the house in question or keys to the locked
room off the master bedroom. There was no evidence of clothing, men's or women's, or personal
belongings tying them to the master bedroom, and no direct evidence they individually or jointly
had access to the locked room where the 4.17 ounces of marihuana and the methamphetamine
were discovered. There was no evidence offered showing that either appellant had been seen
planting, cultivating, watering or working the rock bordered garden where the growing marihuana
plants were found. No fingerprint evidence was offered to establish their connection with the
residence, the locked room, or the garden items and tools. A cigarette package was found near
the garden and the same brand cigarette package was found in a trash can in the house but neither
appellant was shown to smoke that brand.

 In Damron, the evidence revealed that while Damron was away from his home, a
search warrant was executed at the home. Id. at 934. Damron's wife and child were the only
persons in the home when the search commenced. In a bedroom closet authorities found one
pound of marihuana in various containers and some large stems of marihuana plants. Damron was
arrested away from home, and by the time he was taken to his residence, the search had been
completed. Evidence showed that two days prior to the search Damron's brother-in-law, who had
previously been convicted of marihuana possession, had been in the house.

 In finding the evidence insufficient to support Damron's conviction, the court noted
the following:



In the instant case the appellant was (1) not at the place searched at the time of the
search, and (2) there were other persons present at the time of the search and
shown to be living there so appellant was not in exclusive possession, (3) the
marihuana was found in a closet in a bedroom without any showing it was
appellant's bedroom or the only bedroom in the house and no showing of
appellant's personal belongings in the closet or bedroom or even the observation
of any men's clothing, etc., and (4) appellant was not found in possession of any
contraband at the time of arrest nor (5) was he under the influence of any narcotic
and (6) he did not make any incriminating statements at the time of the arrest.



Id. at 936.


 The most damaging evidence for both appellants was the undated videotapes
displaying sexual activity which the prosecutor asserted also demonstrated the occasional use or
simulated use of a bong by the couple shown on the tapes. Officer Dunn identified appellants in
the courtroom as "the people" in one of the videotapes. The difficulty is that there were two
separate couples on each tape and Dunn did not distinguish between them. These tapes may
support the conclusion that at some time prior to the search in question appellants had used
narcotic paraphernalia and were familiar with marihuana but that alone would not establish the
necessary knowledge and control of the marihuana in the locked room or the marihuana in the
garden. Whoever lived in the house would have been aware of the marihuana and narcotic
paraphernalia in plain view, but this alone would not have been sufficient to show the requisite
knowledge and control of the contraband in the locked room or garden to establish joint
possession where others occupy the premises. See Espinoza v. State, 642 S.W.2d 202, 204 (Tex.
App.--Houston [14th Dist.] 1982, no pet.). In a circumstantial evidence case, one inference cannot
be founded upon another to sustain a conviction. Id. Moreover, knowledge of the existence of
something does not necessarily constitute control of it. See Brady v. State, 771 S.W.2d 734, 736
(Tex. App.--Fort Worth 1989, no pet.). There was no evidence of conduct by appellants which
showed that they exercised control over the contraband, the possession of which the State relies
upon for conviction. The record is also devoid of evidence showing that appellants aided or
encouraged each other or any other person in the possession of the marihuana and
methamphetamine. Id., see also Tex. Penal Code Ann. § 7.02(a)(2) (West 1974).

 In Brady, the court considered a situation where a husband was growing marihuana
in a family greenhouse. The State failed to produce any evidence that the defendant-wife knew
that the marihuana was in the greenhouse or that she aided or encouraged her husband in the
possession of marihuana. The court reversed the conviction citing Cude v. State, 716 S.W.2d 46,
47 (Tex. Crim. App. 1986). Brady, 771 S.W.2d at 738. In Marable v. State, 802 S.W.2d 7
(Tex. App.--Texarkana 1990, no pet.), the evidence was insufficient to convict a farmer's wife of
possession of marihuana even though there was extensive evidence that the farmer and his
daughter cultivated plots of marihuana. The evidence against the wife did not go beyond
establishing that she lived on the property.

 While every circumstantial evidence case must be judged by its own facts, the
presence or absence of various factors often determine whether the requisite affirmative links are
sufficient. McGuill v. State, 704 S.W.2d 46, 49 (Tex. App.--Corpus Christi 1985, pet. ref'd). 
We have examined the cases cited by the State in support of the convictions and find that they are
distinguishable. (10)

 While the evidence may suggest the guilt of appellants, the proof in these cases
amounts to no more than a mere probability or strong suspicion and is insufficient to prove
beyond a reasonable doubt that appellants possessed the marihuana and methamphetamine in
question, even when the evidence is viewed in the light most favorable to the court's judgment
and the "rationality" test of Jackson v. Virginia is applied. Rodriguez v. State, 635 S.W.2d 552,
554 (Tex. Crim. App. 1982). The State simply did not meet its burden of proof. Appellants'
points of error are sustained.

 When this Court finds that the evidence is insufficient to sustain the convictions,
the constitutional guarantee against double jeopardy precludes further prosecution of the causes. 
Burks v. United States, 437 U.S. 1 (1978); Greene v. Massey, 437 U.S. 19 (1978).

 The judgments are reversed and reformed to reflect an acquittal in each case.



 

 John F. Onion, Jr., Justice

[Before Justices Powers, Jones and Onion*]

Reversed and Reformed

Filed: 

[Do Not Publish]













* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (1988).

1.   This room was also described in the record as a "teenager's room."
2.   This substance does not appear to have been submitted for chemical analysis and the record
does not reveal its weight.
3.   Here again, the record does not reveal the amount of the substance observed nor does the
record show that this substance was ever submitted for chemical analysis.
4.   The "residue" was not further described, and the record does not identify the "residue."
5.   The record does not reveal just how the large closet or room was locked or how the officers
opened the room.
6.   Officer Dunn revealed that the plants were stripped and dried before being submitted for
chemical analysis as required by the Texas Department of Public Safety.
7.   The search warrant introduced by appellants at the hearing on the motion to suppress reflects
11501 Oak Branch Drive is in the Oak Run Subdivision in Hays County but reflects no legal
description. The trial court sustained appellants' objection to introduction of the warrant at the
trial on the merits.
8.   Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), abolished the reasonable
hypothesis analytical construct of innocence doctrine formerly used in circumstantial evidence
cases. Geesa made clear that it was not to be applied retroactively. The instant case is a pre-Geesa case and Geesa is inapplicable.
9.   At the suppression hearing, Deputy Montague testified there were pictures "on the wall of
a boy and girl who appeared to attend high school." He did not know if they had obtained the age
of seventeen years. He did not know specifically where they lived. He had no prior information
on the "son," but knew he had a different last name. None of this testimony was re-offered at the
trial.
10.   The State notes that in Barry v. State, 629 S.W.2d 84 (Tex. App.--Dallas 1981, pet. ref'd),
there was no proof that the defendant was in exclusive possession of the premises or that he owned
or rented the premises, yet the evidence was sufficient because the contraband was found in plain
view at numerous locations in the apartment, it was accessible to the defendant and there was a
showing that he was familiar with contraband. An examination of the Barry opinion shows that
the defendant was present at the time of the search, there was an odor of marihuana in the
bedroom of the defendant's girlfriend's apartment, and the defendant was standing in the doorway
of the bedroom. Men's clothing was found in the bedroom as well as a court arraignment sheet
bearing the defendant's name. There was loose marihuana in various places in the apartment
conveniently accessible to the defendant who apparently could recognize it on sight as marihuana. 
Marihuana was also found in his automobile. Without question, the case is distinguishable on the
facts.


     Thomas v. State, 658 S.W.2d 175 (Tex. Crim. App. 1983), relied upon by the State, was
reversed because of improper time restrictions on the defendant's voir dire examination of the jury
panel. In passing on the sufficiency of evidence, the court merely noted that the defendant and
his wife were residents of the home involved and were present when the search was conducted
and contraband seized at locations in open view in common areas. The husband's conviction for
possession of methamphetamine was upheld. No other facts were disclosed and no authorities
were cited. We do not deem Thomas controlling.


     The State also argues that "possession" can be proved by the "existence of a well-kept and
cultivated garden." The State cites Estrada v. State, 643 S.W.2d 753 (Tex. App.--San Antonio
1982, no pet.) where the husband alone was convicted of possession of marihuana over four
ounces. Acting on an anonymous tip police officers went to the address given. The defendant's
wife was standing in a marihuana patch with freshly picked leaves in her hand. The defendant
was standing nearly within reaching distance of the growing plants. Other plants were drying on
the clothes line. After a search warrant was obtained, the officers found marihuana cigarettes in
the house. While pointing out that the State could have been more diligent in offering evidence
of the defendant's nexus to the premises, the court affirmed the conviction of the husband. The
facts are a far cry from those in the instant case.


     There were also gardens in Smith v. State, 722 S.W.2d 205, 209 (Tex. App.--San Antonio
1986, no pet.), cited by the State. Three gardens of marihuana plants were discovered within
twenty-five to forty feet from a trailer house. A garden hose running from the trailer house could
reach all three gardens. Some marihuana plants were five to six foot tall. They were visible from
several parts of the trailer house. Smith and a companion were the only two people on the
property. Officer Cogburn, who had talked to Smith previously, testified that the trailer house
was Smith's residence. Cogburn saw jewelry, clothing and personal items of Smith's in the trailer
and, in plain view, eighteen potted marihuana plants, drug paraphernalia, items used to process
marihuana, marihuana being processed, and processed marihuana. Smith's conviction for
possession of marihuana over four ounces and less than five pounds was upheld. The opinion
does not indicate that the mere presence of the gardens determined the outcome of the appeal.


     Williams v. State, 524 S.W.2d 705 (Tex. Crim. App. 1975), is a more difficult case to
distinguish at least as to the wife's conviction. The defendants, husband and wife, lived at the
residence in question. In fact, they told the officer prior to their arrests for possession of
marihuana that they lived there. The record was devoid of evidence that anyone else occupied or
had access to the house. In the back yard officers observed marihuana plants growing. In the
house marihuana seeds and narcotic paraphernalia were found. After arrest, the husband told the
officers that the marihuana plants were his and that he grew them and that his wife need not be
arrested. Both convictions were upheld. Campos noted in effect that Williams was contrary to
a number of cases holding that the State was required to show more than mere presence or
residence to establish a link between the accused and the contraband. Id. 716 S.W.2d at 586. See
Rhyne, 620 S.W.2d at 601; Williams v. State, 498 S.W.2d 340 (Tex. Crim. App. 1973); Hoss
v. State, 735 S.W.2d 899, 902 (Tex. App.--Houston [14th Dist.] 1987, no pet.). Further, factual
differences separate the instant case and Williams.


     The State asserts that appellants were married but does not point to the record where the
evidence established their martial status. The deed referred to similar named individuals as
"James W. Brennan and wife . . . ," but it was never proven appellants were the same individuals. 
If appellants were one of the couples on the videotapes, then on some unknown dates they were
sexually intimate, but the tapes do not reflect the marital status. The State urges that courts have
approved of evidence of a close relationship "as establishing the link between the defendant and
the contraband." The State relies upon Ex parte Stowe, 744 S.W.2d 615, 617 (Tex.
App.--Houston [1st Dist.] 1987, no pet.). Stowe was convicted of possessing over twenty-eight
grams of methamphetamine. His motion for new trial was granted. He then filed a habeas corpus
application advancing a former jeopardy claim. The court of appeals upheld the trial court's
rejection of that claim. In disposing of Stowe's contention, the court of appeals observed some
of the factors to be examined in determining if a sufficient link between the accused and the
contraband has been established. Among the factors, the court listed: "11)  Whether appellant was
closely related to other persons in joint possession of the contraband or to other persons who
owned the premises, see Williams v. State, 524 S.W.2d 705, 707 (Tex. Crim. App. 1975);
Earvin, 632 S.W.2d 924; [Earvin v. State, 632 S.W.2d 920 (Tex. App.--Dallas 1982, pet. ref'd)]." 
As noted earlier, Williams is questionable as to the wife's conviction, and the opinion does not
discuss the above quoted factor as constituting an affirmative link. Earvin does make a similar
statement as Stowe, but the supporting authorities in note 4 at 924 are unpersuasive. Certainly
under any circumstances, the factor standing alone does not constitute a sufficient nexus between
an accused and the contraband showing his knowledge and control. For the same reasons, we do
not find Simpson v. State, 709 S.W.2d 797, 801 (Tex. App.--Fort Worth 1986, pet. ref'd), which
cites Earvin, to be controlling. Moreover, Simpson lists the factor as only one of many that may
be considered as establishing an affirmative nexus between the accused and the contraband.


     The State also calls our attention to Davis v. State, 696 S.W.2d 494 (Tex. App.--El Paso 1985,
no pet.). Davis was tried alone and convicted of possession of marihuana of more than fifty
pounds but less than two hundred pounds. Davis and his female co-defendant lived together in
a two bedroom mobile home. They were not present when the officers conducted the search, but
both testified at trial. In finding the evidence sufficient, the Court held that affirmative linkage
was established by demonstrating control over the premises shared with a co-defendant, familiarity
with marihuana by both co-defendant tenants, use of this type of contraband by both, admission
of joint ownership of other contraband of the same type and associated paraphernalia in two other
locations in the relatively small trailer house, a pervasive aroma of the contraband throughout the
premises, and location in plain view of the scales, in proximity to the large cache. On its facts,
Davis is also distinguishable from the instant case.