IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-197-CR





CHARLES WILLIAMS, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 7503, HONORABLE DAN R. BECK, JUDGE PRESIDING



 





 This appeal is taken from a conviction for possession of cocaine less than twenty-eight grams. After the jury found appellant guilty, the trial court assessed punishment at ten
years' imprisonment.

 Appellant advances seventeen points of error. First, he challenges the legal
sufficiency of the evidence to sustain the conviction. Next, in twelve points of error, appellant
complains that the trial court erred in admitting into evidence a recorded conversation and an
audio/video tape in violation of federal and state constitutional provisions and a state statute. In
two points of error, appellant raises Batson v. Kentucky, 476 U.S. 79 (1986), questions. The last
two points of error deal with claimed jury charge errors. We will sustain the challenge to the
sufficiency of the evidence and do not reach the other points of error.

 About 9 p.m. on March 22, 1991, Texas Department of Public Safety Troopers
Scott Bayless and Justin Owen were patrolling on U. S. Highway 77, just north of LaGrange. 
They stopped a 1977 Oldsmobile station wagon after seeing it weave and swerve over the shoulder
stripe on the right side of the highway. Appellant was the driver. He was accompanied by a
seventeen year old female, Me-Sheila Duncan, and a male juvenile. Appellant exited the
automobile and was questioned by the officers about his driver's license and proof of liability
insurance on the Oldsmobile. Appellant had neither a driver's license nor evidence of liability
insurance. A registration check by the officer showed that the vehicle was registered to a Douglas
Logan of LaGrange. With appellant's permission, the officers searched the Oldsmobile and found
nothing unlawful. No contraband was found on appellant's person, and there was no evidence that
he was under the influence of narcotics.

 During the stop, the Assistant Chief of Police at LaGrange arrived on the scene. 
After this officer conversed with the other officers, Trooper Bayless approached Me-Sheila
Duncan, who was apparently out of the vehicle at this time, to check her. Duncan told Bayless
that he could not search her because she was a female. She had both hands in her coat pockets. 
Bayless asked her to remove her hands from the coat pockets. Duncan removed her left hand but
not her right hand. When Bayless reached for her right hand, Duncan removed her right hand and
threw two objects into a nearby ditch. Trooper Owen immediately recovered the objects, two
match boxes containing what the officers believed to be rock cocaine. Duncan was arrested for
possession of cocaine and warned of her rights. A search incident to her arrest revealed that she
had $240.00 on her person. The juvenile was not arrested. Appellant and Duncan were placed
in the back seat of the patrol car. A second search of the Oldsmobile station wagon also failed
to reveal any contraband.

 The D.P.S. patrol vehicle was equipped with a video camera with on-camera and
remote microphone capabilities. Some of the activities and conversation outside the patrol vehicle
during the stop were recorded. When appellant and Duncan were placed in the patrol vehicle,
Trooper Bayless, without their knowledge, switched on the on-camera or inside microphone to
record what was said in the vehicle while the officers were outside. The audio/video tape and the
taped or recorded conversation between appellant and Duncan was introduced over objection as
State's exhibit number one. The exhibit reflects that when Duncan was arrested and handcuffed,
one officer told appellant, "You are going too." No warnings were given. Appellant was
handcuffed and placed in the patrol vehicle with Duncan. The tape was played for the jury but
was not transcribed.

 Our playing of the tape reveals a disjointed conversation between two agitated and
excited individuals. Police dispatcher broadcasts obliterate the beginning of the conversation. 
Duncan stated: "They said I threw it." Appellant inquired why Duncan had not thrown "it" when
he got out of the car and "why didn't you throw it when I told you?" Duncan began to cry and
stated that she was going to jail "for some time," was going "to the pen." Appellant complained
that he was being charged with it and somebody "set me up." Duncan lamented that she already
had three years, (1) "three months in Harris and I don't know how much here." Duncan then
declared that she had "no crack in my bag" and the officers had "nothing," and could not charge
her with what they picked up. Appellant reminded her that the officers saw her throw it and that
he saw her throw it, too. Duncan replied "I'm arrested, O.K.? I did it for Flash. (2) I want him
to get me out of this s--t." Appellant accused Duncan of not listening or hearing as he "was
getting the rap." Duncan responded that she was also getting "the rap," and then suddenly she
asked if he was being arrested, too. Appellant's reply was "you are g d right, I am." 
Appellant told Duncan not to cry, but she should have thrown it. Duncan then told appellant: "If
you are not going to take the blame I have got to. It is not mine." Appellant answered: "It is not
mine, either." Appellant then inquired if Duncan had "more than two boxes," and she replied:
"That's it."

 The conversation ended when an officer opened the car door. When appellant
inquired why he was being arrested, the officer told him the arrest was for "no insurance, unless
we find on you what we found on her." After later listening to the recorded conversation, the
officers charged appellant with possession of the cocaine in the match boxes. The officers
admitted that appellant was never seen in actual possession of the cocaine and the match boxes
were not connected to appellant. No fingerprints check was made on the match boxes.

 Dennis Ramsey, a chemist/toxicologist with the Texas Department of Public Safety,
testified that he had performed a chemical analysis on the substance in the two match boxes
delivered to him by Trooper Owen. He determined that there was cocaine in each box. Ramsey
did not testify as to the amount of cocaine. When asked if he used all of the contents of the match
boxes in the chemical tests, Ramsey replied "No, sir. There is still what I determined to be
cocaine in each box." When the State rested its case at the guilt/innocence stage of the trial,
appellant also rested.

 The standard for reviewing the legal sufficiency of the evidence to sustain a
conviction is whether, viewing the evidence in the light most favorable to the jury's verdict, any
rational trier of fact could have found the essential elements of the offense charged beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 n.12 (1979), Valdez v. State, 776
S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 963 (1990). The standard for
review is the same in both direct and circumstantial evidence cases. Herndon v. State, 787
S.W.2d 408, 409 (Tex. Crim. App. 1990); Christian v. State, 686 S.W.2d 930, 934 (Tex. Crim.
App. 1985); see also Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991) (abolishing the
reasonable hypothesis of innocence analytical construct doctrine formerly used in circumstantial
evidence cases.). The instant cause is a post-Geesa case to which that decision is applies.

 The sufficiency of the evidence must also be measured against the jury charge. If
the evidence does not conform to the jury instruction given, it is insufficient as a matter of law. 
Nickerson v. State, 782 S.W.2d 887, 891 (Tex. Crim. App. 1990); Garrett v. State, 749 S.W.2d
784, 802-03 (Tex. Crim. App. 1988) (op. on reh'g); Boozer v. State, 717 S.W.2d 608, 610-11
(Tex. Crim. App. 1984); Krueger v. State, 843 S.W.2d 726, 727 (Tex. App.--Austin 1992, pet.
ref'd). The court's charge in the instant case did not include an instruction on the law of parties. 
See Tex. Penal Code Ann. §§ 7.01, 7.02 (West 1989). Appellant's conviction cannot be sustained
on the theory that he was criminally responsible for the acts of Me-Shelia Duncan or that he acted
to aid or encourage her in the commission of the offense of possession of cocaine. Jones v. State,
815 S.W.2d 667, 671 (Tex. Crim. App. 1991); Krueger, 843 S.W.2d at 127. Therefore, we must
determine if there is legally sufficient evidence to support a finding beyond a reasonable doubt by
a rational trier of fact that appellant personally possessed the cocaine in question.

 When an accused is charged with the unlawful possession of a controlled substance
such as cocaine, the State must prove two elements: (1) that the accused exercised care, control,
custody, or management over the contraband and (2) that the accused knew the matter possessed
was contraband. Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); Whitworth v.
State, 808 S.W.2d 566, 568 (Tex. App.--Austin 1991, pet. ref'd). "Possession" means actual care,
custody, control or management. See Tex. Health & Safety Code Ann. § 481.002(38) (West
1992). "Possession" is a voluntary act if the possessor knowingly obtains or receives the thing
possessed or is aware of his control of the thing for a sufficient time to permit him to terminate
his control. See Tex. Penal Code Ann. § 6.01(b) (West 1974). This definition in the Penal Code
applies to a prosecution under the Controlled Substances Act. Tex. Penal Code Ann. § 1.03(b)
(West 1974).

 The mens rea requirement of a possessory offense is knowledge by an accused that
his conduct or the circumstances of his conduct constitutes possession of a controlled substance. 
Tex. Penal Code Ann. § 6.03(b) (West 1974); Humason v. State, 728 S.W.2d 363, 368 (Tex.
Crim. App. 1987). Possession of a controlled substance need not be exclusive, and evidence that
an accused jointly possessed the controlled substance with another is sufficient. McGoldrick v.
State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); Oaks v. State, 642 S.W.2d 174, 176 (Tex.
Crim. App. 1982). Whether the theory of the prosecution is sole or joint possession, the evidence
must sufficiently link or tie the accused to the contraband by a showing that indicates the
accused's knowledge and control of the contraband. Waldon v. State, 479 S.W.2d 499, 501 (Tex.
Crim. App. 1979). The burden of proof rests upon the State. Damron v. State, 570 S.W.2d 933,
935 (Tex. Crim. App. 1978).

 When there is an absence of direct evidence that an accused was in exclusive
possession of a controlled substance, then possession, if any, must be proved by circumstantial
evidence. Oaks, 642 S.W.2d at 179. Various facts and circumstances may be shown to prove
that the accused and another person or persons acted jointly in possessing a controlled substance. 
Id. at 176. Proof, however, that amounts only to a strong suspicion or mere probability is not
sufficient to sustain a conviction. Urbano v. State, 837 S.W.2d 114, 116 (Tex. Crim. App.
1992); Skelton v. State, 792 S.W.2d 162, 167 (Tex. Crim. App. 1989), cert. denied, 111 S.Ct.
210 (1990). Mere presence of an accused at the scene of an offense, Oaks, 642 S.W.2d at 177,
or "even knowledge of an offense does not make one a party to joint possession." Rhyne v. State,
620 S.W.2d 599, 601 (Tex. Crim. App. 1981). Possession means more than being where the
action is; it involves the exercise of dominion and control over the thing allegedly possessed. 
Oaks, 652 S.W.2d at 177. A defendant's close association with someone involved in criminal
activity will not alone support an inference of guilt. United States v. Osgood, 794 F.2d 1087,
1094 (5th Cir.), cert. denied, 479 U.S. 994 (1986).

 In the instant case, there was no evidence placing appellant in actual physical
possession of the cocaine in question. No contraband was found on his person or in the vehicle
he was driving. Appellant was not shown to have been under the influence of narcotics nor did
he attempt to flee. He made no incriminating statements to the officers. The State relies heavily
upon the recorded conversation between appellant and Duncan. The conversation shows that the
cocaine was in Duncan's possession, not appellant's. If any of appellant's statements or remarks
in the conversation can be interpreted as showing that appellant aided or encouraged Duncan in
the possession of cocaine offense, they would not be sufficient to sustain appellant's conviction
for the law of parties was not submitted in the court's charge. Boozer, 717 S.W.2d at 610-11. 
The conversation revealed that appellant did not know everything that Duncan may have had in
her possession, and he clearly denied that the cocaine discarded by Duncan was his. The State
relies upon appellant's remark that he was being "set up" as denoting "a consciousness of guilt." 
In the context in which the remark was made, it is obvious that appellant was complaining of
being framed. Standing alone it does not establish that appellant had the actual possession of the
cocaine. While the evidence reflects that the thirty-eight year old appellant and the seventeen year
old Duncan and her juvenile brother were on the way to Giddings, there was no showing as to
how long Duncan had been in the station wagon, or what her past association with appellant had
been. There is nothing more than strong suspicion or mere probability that appellant had the
actual care, custody, control and management of the cocaine that Duncan threw into the ditch. 
The State did not sustain its burden of proof.

 The State relies upon Young v. State, 842 S.W.2d 365 (Tex. App.--Eastland 1992,
no pet.). Young did not even consider that mere presence or even knowledge of an offense does
not make one a party to joint possession of contraband. Rhyne, 620 S.W.2d at 601. (3) We are not
bound by Young.

 Viewing the evidence in the light most favorable to the jury's verdict, we cannot
conclude that a rational trier of fact could have found beyond a reasonable doubt the essential
elements of the offense charged and as submitted to the jury in the court's charge. Our
responsibility does not include substituting our view of the evidence for that of the jury's,
Blankenship v. State, 780 S.W.2d 198, 207 (Tex. Crim. App. 1989); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988), but our function is to insure as a matter of law that
no one is convicted of a crime except on proof beyond a reasonable doubt. "In carrying out our
task, we remain cognizant that 'proof beyond a reasonable doubt' means proof to a high degree
of certainty. Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991)." Urbano, 837
S.W.2d at 116. Point of error one is sustained.

 In view of our disposition of the initial contention, we do not reach the other points
of error.

 Because the evidence is insufficient to sustain the conviction, the principles of
double jeopardy apply and the appellant is ordered acquitted. Burks v. United States, 437 U.S.
1 (1978); Greene v. Massey, 437 U.S. 19 (1978).

 The judgment of conviction is reversed and reformed to reflect an acquittal.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Reversed and Reformed


Filed: November 24, 1993


Do Not Publish
































* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Appellant's brief refers to this matter as "3 years probation."
2.   "Flash" was shown to be Kevin "Flash" Bradley, Duncan's husband, who was in the Fayette
County Jail at the time.
3.   Justice Arnot, dissenting in Young, wrote: "I cannot hold that driving an automobile,
knowing that contraband is in it, alone is sufficient to exercise control over the contraband [found
in the rear seat area]." Justice Dickerson, concurring in Young, stated: "Let the drivers of motor
vehicles beware! If you agree to drive a car as an accommodation to your friend, this case holds
that you can be found guilty of possession of cocaine if your friend testifies that he had cocaine
in his car."