NUMBER 13-04-194-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

JOSE ANGEL TREVINO,                                            Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                   On appeal from the 24th District Court

                           of Jackson
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








The trial court
convicted appellant Jose Angel Trevino of possession of more than five but less
than fifty pounds of marihuana.  The
court assessed punishment at a term of ten years in the Texas Department of
Criminal JusticeBInstitutional Division
and assessed a $5,000 fine.  By seven
issues, Trevino challenges the sufficiency and admissibility of the
evidence.  We affirm.

I.  Background

State Trooper Don
Plunkett testified that, on October 15, 1996, accompanied by another trooper,
he was on drug interdiction patrol in a marked unit.  He observed an unrestrained child standing on
the back seat of an older model Ford station wagon traveling on U.S. 59.  The vehicle had an expired registration
sticker from February 1996.  Trooper
Plunkett activated the overhead lights on his unit and stopped the
vehicle.  Trevino, nervous and
apprehensive, emerged from the vehicle. 
Trevino grew increasingly nervous in the trooper's presence.  In his professional opinion, trooper Plunkett
concluded that Trevino was extremely nervous in his appearance and manner,
consistent with individuals Plunkett stopped in the past for hauling large
amounts of narcotics.  Trevino told
trooper Plunkett that he had purchased the vehicle two days ago and he was traveling
to Houston to search for work. Trevino's wife was a passenger in the front
seat.  Trooper Plunkett testified that
her communications were consistent with Trevino's statements to him.  Trooper Plunkett observed a small amount of
clothing in the vehicle but no personal belongings or household items to
indicate an extended stay.  Both Trevino
and his wife consented to the search of the vehicle.  








Trooper Plunkett
detected a strong odor of a deodorizer in the driver's side area of the vehicle.  He also detected a strong odor of fresh paint
and Bondo emanating from the rear seat area. 
Plunkett testified that, based on his training and experience,
deodorizers are used to mask the smell of drugs in transport.  He further testified that fresh paint and
Bondo, considered "trademarks," are consistent with creating false
compartments in vehicles for purposes of transporting drugs.  Because the odor was very strong in the back
seat, Trooper Plunkett concentrated his search in that area.  On the left rear passenger side door, he
observed new rivets and scratch marks on the middle section of the rear seat
area, which, based on his experience and training, indicated someone tampered
with it.  Trooper Plunkett searched
underneath the station wagon and tapped on the gas tank.  Tapping produced a solid, dull sound.  He smelled a strong odor of paint and Bondo
emitting from the top portion of the gas tank. On further inspection, he
detected a strong odor of marihuana emanating from the gas tank.  Based on his training and experience, these
were indicators that contraband was inside the gas tank.  Subsequently, he arrested Trevino for
possession of a controlled substance. 








Plunkett testified
that further search of the vehicle once impounded and inventoried showed that
Bondo and paint were used on a false compartment within the gas tank.  The search of the compartment in the gas tank
netted approximately fifty bundles of fresh marihuana.  Alteration of the gas tank occurred from the
interior of the vehicle in the back seat area. 
Consistent with his experience, trooper Plunkett testified that the
technique is used by drug traffickers because law enforcement at border patrol
checkpoints generally view the underside of the vehicle to check alteration of
gas tank bolts.  Modifying the gas tank
from inside the vehicle will not show alteration of the gas tank from beneath
the vehicle.  According to trooper
Plunkett, the method is used to stay a "step ahead" of law
enforcement detection of concealed compartments. 

Bob Snipes testified
that he was in the business of selling and financing old cars in Waco.  He purchased a 1984 Ford Crown Victoria
station wagon on March 8, 1996 from the vehicle owner, Carolyn Matteson.  On September 2, 1996, he sold the vehicle to
a Jose Luis Gonzales.  During the
approximate seven months the vehicle was at his business, no work was performed
on the vehicle involving Bondo or fresh paint. 
No one in his business made a false compartment to fit into the gas
tank.  

Dennis Quarles
testified he worked in automotive repair and, in that capacity,  worked with the Texas Department of Public
Safety in removing drugs from vehicle compartments and, in particular, from
Trevino's vehicle.  He testified that the
gas tank, as modified, could hold between five and seven gallons of gas and the
driver would have to fill the gas tank approximately every one hundred
miles.  

The trial court
pronounced Trevino guilty and assessed punishment.  This appeal ensued.

II.  Sufficiency of the Evidence








By his first and
second issues, Trevino argues that the evidence is legally and factually
insufficient to sustain the conviction for possession of marihuana because  the evidence does not affirmatively link him
to the marijuana.  The State counters
that the evidence was sufficient.

A.  Legal Sufficiency Standard of Review

A legal‑sufficiency
challenge calls on us to review the relevant evidence in the light most
favorable to the verdict.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004); Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003) (en banc); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000) (en banc).  We consider
all the evidence that sustains the conviction, whether properly or improperly
admitted.  Conner v. State, 67
S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Garcia v. State, 919
S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc)); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); Cook v. State, 858
S.W.2d 467, 470 (Tex. Crim. App. 1993) (en banc).  The legal sufficiency of the evidence is
measured against the statutory elements of the offense as modified by the
charging instrument.  Curry v. State,
30 S.W.3d 394, 404 (Tex. 2000).  We then
determine if any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.  Jackson,
443 U.S. at 319; Johnson, 23 S.W.3d at 7. 

B.  Factual Sufficiency Standard of Review








A factual‑sufficiency
review begins with the presumption that the evidence supporting the verdict is
legally sufficient, that is, sufficient under Jackson v. Virginia, 443
U.S. 307, 319 (1979).  See Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996) (en banc).  In a factual sufficiency review, the
appellate court views all the evidence in a neutral light and determines
whether evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond‑a‑reasonable‑doubt standard
could not have been met.  Threadgill
v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (en banc).  In conducting a factual sufficiency review,
we review all the evidence.  Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We must consider the most important evidence
that the appellant claims undermines the 
verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 
However, we approach a factual‑sufficiency review with appropriate
deference to avoid substituting our judgment for that of the fact finder.[2]  Johnson v. State, 23 S.W.3d 1, 6‑7
(Tex. Crim. App. 2000) (en banc).  Every
fact need not point directly and independently to the accused's guilt.  Vanderbilt v. State, 629 S.W.2d 709,
716 (Tex. Crim. App. 1981).  A conclusion
of guilt can rest on the combined and cumulative force of all the incriminating
circumstances.  Id.








Our neutral review of all the evidence, both for and
against the challenged elements, looks to determine whether proof of guilt is
so obviously weak as to undermine confidence in the fact finder's
determination, or whether proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  See
Zuniga v. State, 144 S.W.3d 477, 484‑85 (Tex. Crim. App. 2004); see
also Zuliani v. State, 97 S.W.3d 589, 593‑94 (Tex.
Crim. App. 2003).  We must assume that
the fact finder resolved conflicts, including conflicting inferences, in favor
of the verdict, and must defer to that resolution.  Matchett v. State, 941 S.W.2d 922, 936
(Tex. Crim. App. 1996) (en banc).

C.  Elements of the Offense of Possession of
Marihuana

The indictment charged
Trevino with possession of five pounds or more but less than fifty pounds of
marihuana.  The elements of the offense
require proof that (1) Trevino, (2) on or about October 15, 1996, (3)
intentionally and knowingly, (4) possessed, (5) marihuana, (6) in an amount of
five pounds or more but less than fifty pounds.[3]
 See Tex. Health & Safety Code Ann. 481.121(a)(4) (Vernon
2003).  A person acts knowingly, or with knowledge, with respect to the nature
of conduct or to circumstances surrounding conduct when the person is aware of
the nature of the conduct or that the circumstances exist.  Tex.
Pen. Code Ann. ' 6.03(b) (Vernon 2003).  Intent may also be inferred from circumstantial
evidence such as acts, words, and the conduct of the appellant.  Guevara v. State, 152 S.W.3d 45, 50
(Tex. Crim. App. 2004).








In possession of
controlled substance cases, the two following evidentiary requirements must be
satisfied:  first, the State must prove
the defendant exercised actual care, control and management over the
contraband; and, second, that he had knowledge that the substance in his possession
was contraband.  King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (en banc).  The term "controlled substance"
includes the "aggregate weight of any mixture, solution, or other
substance containing a controlled substance."  Tex.
Health & Safety Code Ann. _ 481.002(5) (Vernon
Supp. 2004-05).[4]  Expert witness testimony regarding the nature
of the controlled substances based upon visual observation is proper
evidence.  See Tex. R. Evid. 702; Martinez v. State, 22 S.W.3d 504, 508 (Tex.
Crim. App. 2000) (en banc).








The mere presence of
the accused at a place where contraband is located does not make him a party to
joint possession, even if he knows of the contraband's existence.  Oaks v. State, 642 S.W.2d 174, 177 (Tex.
Crim. App. 1982).  Whether the theory of
prosecution is sole or joint possession, the evidence must affirmatively link
the accused to the contraband in such a manner, and to such an extent that a
reasonable inference may arise that the accused knew of the contraband's
existence and that he exercised control over it.  Travis v. State, 638 S.W.2d 502, 503
(Tex. Crim. App. 1982).  When an accused
is not in exclusive possession and control of the place where contraband is
found, it cannot be concluded he had knowledge or control over the contraband
unless there are additional independent facts and circumstances that
affirmatively link him to the contraband. 
Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App.1995) (en
banc).  Similarly, when the contraband is
not found on the accused's person, or it is not in the exclusive possession of
the accused, additional facts and circumstances must link the accused to the
contraband.  Menchaca v. State,
901 S.W.2d 640, 651 (Tex. App.BEl Paso 1995, pet.
ref'd).  The affirmative links doctrine
is the appropriate means of applying the Jackson rationality standard of
appellate review.  Jackson, 443
U.S. at 319; Martinets v. State, 884 S.W.2d 185, 188 (Tex. App.BAustin 1994, no
pet.).  Various factors may be considered
when determining whether the evidence is sufficient to affirmatively link the
accused with the contraband.  The number
of the factors is not as important as the logical force the factors have in
establishing the elements of the offense. 
Jones v. State, 963 S.W.2d

826, 830 (Tex. App.BTexarkana 1998, pet.
ref'd); Hurtado v. State, 881 S.W.2d 738, 743 (Tex. App.BHouston [1st Dist.]
1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.BHouston [1st Dist.]
1994, pet. ref'd).  

D.  Sufficiency Analysis

1.  Legal
Sufficiency








In reviewing the sufficiency of the evidence, we
should look at "events occurring before, during and after the commission
of the offense and may rely on actions of the defendant which show an
understanding and common design to do the prohibited act."  Guevara, 152 S.W.3d at 49.  Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative effect
of all the incriminating facts are sufficient to support the conviction.  Id.

In this case, viewed in the light most favorable to
the verdict, the evidence showed that Trevino was "extremely
nervous," when stopped for routine traffic violations.  He told the trooper that he was en route to
Houston to look for work, however, in plain view, the trooper noticed a small
amount of clothing in the vehicle for a trip to look for work.  The trooper also observed in plain view the
odor of a deodorizer, an altered middle section of the back seat, and a strong
odor of fresh paint and Bondo.  Trevino
consented to the search of the vehicle, admitting that he bought it two days
before that date.  The trooper's search
netted a false compartment above the gas tank, created by access through the
interior of the vehicle.  The search
yielded approximately fifty bags of fresh marihuana.  Testimony showed that the alteration of the
gas tank occurred from inside the vehicle. 
Paint and Bondo, often used to mask transportation of contraband,
apparently were used in the alteration of the gas tank.  The strong odor caught the arresting
trooper's attention and led to the discovery of the contraband.  Testimony showed that the gas tank was
altered small enough to reasonably infer that frequent stops to re-fuel were
necessary.        








Trevino admitted he owned the vehicle.  The vehicle carried fresh marihuana, secreted
in a false compartment.  The odor of
fresh paint and Bondo establishes that the alteration of the gas tank to create
the false compartment was recent. 
Similarly, that the marihuana was fresh established that its packaging
and secreting was recent.  The trial
court could have reasonably concluded that the alteration and secreting of the
contraband occurred within the two days of Trevino's ownership of the
vehicle.  Further, the significant
quantity of the marihuana indicates that Trevino had knowledge of the marihuana
and control over it, because the reasonable inference drawn from that evidence
is that the owner of approximately fifty bundles of fresh marihuana would not
place it in a concealed compartment without knowing who would be driving the
vehicle.  See Menchaca, 901 S.W.2d
at 652; Travis, 638 S.W.2d at 503. 
Further, the strong odor of paint and Bondo emanating from inside his
vehicle and the presence of an altered back seat section were in plain view
enough to alert the trooper, and thus Trevino, to an altered gas tank.  We conclude that these affirmative links
sufficiently linked Trevino to the marihuana to sustain his conviction. We
conclude that the evidence was legally sufficient.  Jackson, 443 U.S. at 319; Escamilla,
143 S.W.3d at 817. 

The sole contrary evidence is that the vehicle was
sold to a Jose Luis Gonzalez approximately six weeks before Trevino purchased
it. However, Trevino claimed ownership of the vehicle. The freshness of the
marihuana and of the Bondo and paint indicated recent packaging and
concealment.  Thus, viewed in a neutral
light, we conclude that the contrary evidence is not so strong that the State
could not have met its beyond-a-reasonable-doubt burden of proof.  We conclude the evidence was factually
sufficient to sustain the conviction.  Threadgill,
146 S.W.3d at 664.  We overrule Trevino's
first and second issues.  

III. 
Admissibility of Evidence








By his third, fourth, fifth, sixth, and seventh
issues, Trevino generally asserts that the trial court abused its discretion in
admitting five exhibits over his hearsay objections.  The State responds that, even if improperly
admitted, the error is not reversible because it did not affect Trevino's
substantial rights.  

A.  Standard
of Review

A trial court's admission or exclusion of evidence
is reviewed under an abuse‑of‑discretion standard.  Torres v. State, 71 S.W.3d 758, 760
(Tex. Crim. App. 2002); Salazar v. State, 38 S.W.3d 141, 153‑54
(Tex. Crim. App. 2001).  An abuse of
discretion occurs when the trial court acts arbitrarily or unreasonably,
without reference to guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990) (en banc).  In
other words, an abuse of discretion occurs only when the trial court's decision
is so wrong as to lie outside that zone within which reasonable persons might
disagree.  Id. 

B.  Analysis

The complained of exhibits are the State's exhibits.  Exhibit 10 is Trevino's motor vehicle
proof-of-liability insurance card. 
Exhibits 11 and 12 are paper dealer's license plates retrieved from
Trevino's vehicle.  Exhibit 13 is the
check of the State's witness Snipes, showing he purchased the vehicle before
selling it to Jose Luis Gonzalez. 
Exhibit 14 is the invoice reflecting the sale of the vehicle by Snipes
to Gonzalez on September 2, 1996. 
Trevino argues that the exhibits constitute hearsay and, as such, were
inadmissible.  








Trooper Plunkett testified that the paper license
plates (exhibits 11 and 12) were removed from the vehicle during the
post-arrest inventory search.  Trooper
Plunkett did not recall whether the insurance card (exhibit 10) was discovered
during the inventory search or given him by Trevino.  Snipes, the car dealer, testified that he
paid for the car by check (exhibit 13) and he sold the same car to a Jose Luis
Gonzalez (exhibit 14).  

The case was tried to the bench.  The exhibits were relevant if each had
"any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence."  Tex. R. Evid. 401.  The trial
court could have reasonably concluded that the exhibits were relevant to prove
the chain of custody, possession, or ownership of the vehicle from the period
of ownership by Snipes to Gonzalez to Trevino. 
Thus, we conclude that the trial court's admitting the evidence was not
outside the zone of reasonable disagreement. 
Montgomery, 810 S.W.2d at 379. 
Accordingly, the trial court did not abuse its discretion in admitting
in evidence State's exhibits 10, 11, 12, 13, and 14 in evidence.  








Even assuming the trial court erred in not admitting
the exhibits, we conclude the error, if any, was harmless.  Tex.
R. App. P. 44.2(b).  If the
appellate record in a criminal case reveals constitutional error that is
subject to harmless error review, the appellate court must reverse a judgment
of conviction or punishment, unless the court determines beyond a reasonable
doubt that the error did not contribute to the conviction or punishment.  Id. 
Errors that do not affect substantial rights must be disregarded.  Tex.
R. App. P. 44.2(b).  On this
record, we conclude that Trevino has not shown reversible error.  Thus, we overrule Trevino's third, fourth,
fifth, sixth, and seventh issues.  

IV. 
Conclusion

            Having overruled Trevino's seven issues,
we affirm the trial court judgment.

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 4th day of August, 2005.

 











[1] See Tex.
R. App. P. 47.2, 47.4.





[2] We always remain aware of the fact
finder's role and unique position, a position we are unable to occupy.  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000) (en banc).  Exercise of
our authority to disagree with the fact finder's determination is appropriate
only when the record clearly indicates our intervention is necessary to stop
manifest injustice.  Id.  Otherwise, we accord due deference to the
fact finder's determinations, particularly those concerning the weight and
credibility of the evidence.  Id. 

 





[3] Trevino does not challenge the
amount of marihuana.  





[4] The State has to prove only that
the aggregate weight of the controlled substance mixture, including adulterants
and dilutants, equals the alleged minimum weight.  Melton v. State, 120 S.W.3d 339, 344
(Tex. Crim. App. 2003).